MARY ANN DAVIS *et al. v.* SALLIE S. DAVIS *et al.*

[65 South. 241.]

WILLS.  *Construction.  Conditional bequests.*

>  Where deceased, whose wife had left him and filed a bill for divorce, on entering a hospital to have an operation performed, wrote his parents a letter, stating that if he did not recover, he wanted them to take charge of everything he had; that he loved his wife dearly and that unless she showed that she loved him, he was going to give her up; that as it then stood, he did not want her to have it.  He, however, recovered from the operation, and returned to his work as a railroad employee, and was killed.  In such case deceased did not intend to make an unconditional bequest of his property, but only a bequest to take effect if he should not recover from the operation he was then about to undergo.

APPEAL from the chancery court of Monroe county.

HON. J. Q. ROBINS, Chancellor.

Bill by Mary Ann Davis and others against Sallie S. Davis and others.  From a decree for defendants, complainants appeal.

Appellants were complainants in the court below, and appellees were defendants.

The bill alleges:  That complainants are the father and mother, respectively, of one Henry J. Davis, deceased, and that defendant Mrs. Sallie Stevens Davis is the widow of Henry J. Davis, and that about July 1, 1911, said defendant deserted Henry J. Davis, and refused to live with him as his wife, and that about December 5, 1911, she filed a bill for a divorce.  That defendant was served with process on January 9, 1912, and on January 16th filed his answer to said divorce suit, and that, while same was still pending, to wit, in December, 1912, defendant, who was an employee of the St. Louis & San Francisco Railroad Company, went to a hospital maintained by said railroad company, for the

purpose of having an operation performed, and that while at said hospital, before he was operated on, he wrote a letter to his mother, one of the complainants herein, which letter is offered for probate as his will, and which is as follows:

"Dear Mother: No doubt you will be surprised to learn that I am here for the operation I have needed for some time. The rupture has been troubling me a great deal lately, and I decided very suddenly to come, or 1 would have written you before this. I am at the Frisco Hospital, and from the outlook I judge I am going to be well taken care of, so please don't be worried about me. I have not had a line from Sallie since she left me. So many of the men's wives are here with them, and it makes me feel more despondent than ever to think how my wife is treating me. However should she ever come back to me and does not do— . . . Better we will separate. I love her dearly, but unless she shows she loves me I am going to give her up. She left me because I fussed with her and refused to get up and make a fire while I was mad.

"Should I not get over this operation, I want you and Papa to take charge of everything I've got, sell my pool room for about five hundred dollars at least, and I have eight hundred dollars in the M. & F. Bank of Amory, and a Frisco check of seventy-five dollars due on the 15th, and you know what I have in Columbus. My B. R. T. money is now delinquent and you cannot get that, but I have nearly got it straightened up again. Had Sallie treated me as a loving wife always treats her husband, she might have gotten all I have, but as it stands to-day I certainly do not want her to have it. She has cost me over a thousand dollars already. Well I shall write her a few lines now and let her know where I am. Hope all are well as usual. Bye bye, Henry.

"Sallie has her pass from Greenwood to Amory via Birmingham."

That said Henry J. Davis recovered from his operation and returned to work as an employee of said railroad company, and, while in the employ of said company and engaged in his duties, he was killed by a train of said railroad company; his death being alleged to be due to the negligence and carelessness of the servants of said railroad company. The bill further alleges that his widow has qualified as administratrix of the estate of said Henry J. Davis, and has filed suit against the said railroad company for damages for his death, and is seeking to take charge of certain property left by said Henry J. Davis, and is collecting money due him and converting same to her own use.

The bill makes the railroad company a party defendant, and prays that Mrs. Sallie Stevens Davis be restrained from prosecuting her suit against the railroad company or from taking charge of or converting any of the property left by him to her own use, and that the railroad company be restrained from making any payment to said Sallie Stevens Davis, and prays also that the letters of administration granted to his widow be canceled, and that the letter herein referred to be admitted to probate as the will of said Henry J. Davis, and the complainants be named as executors of said will.

Both defendants demurred to the bill, the principal ground of demurrer being that the letter referred to was, in fact, not a will, since, if it was ever intended as a will, the contingency upon which its validity depended had never happened, since he did not die of the operation, but fully recovered and returned to his work, and that the defendant Mrs. Sallie Stevens Davis was the lawful heir of deceased, there being no children, and that, even if said will was valid, it did not deprive the widow of her right under the statute to bring an action against the railroad company for the death of her husband.

The court sustained both demurrers, and, complainants declining to amend their bill, the court entered a decree dismissing same, from which this appeal was prosecuted.

*D. W. Houston, Sr., & D. W. Houston, Jr.,* for appellants.

The only point stressed or seriously contended for in the court below, against allowing this letter to be established as Henry J. Davis's will, was that it was a contingent or a conditional will, and that was the ground upon which the court below sustained the demurrers, the court stating, in effect, at the time, that, while the later and more modern decisions would seem to sustain this will as valid and as not contingent, he felt bound by the decision in *Magee et al.* v. *McNeill,* 41 Miss. 17.

We will discuss this case later on in our brief, as we first want to cite and quote other authorities to show the general doctrine.

In trying to arrive at the intention of the testator (which is the guiding star), instead of taking all of the language of this instrument and construing all of it together, and as a whole, counsel selected seven words of said letter, to wit: "Should I not get over this operation" and, after having segregated and separated them from all of the other words used by Henry J. Davis, the writer of said instrument, to express his intention and meaning, counsel asked that these seven isolated words be taken by themselves, disconnected from the other words of this instrument, and that the court decide that this renders this instrument a contingent will, and declare it invalid.

We will also discuss later the fallacy of this method of arriving at the intention of the testator, but desire now to show that, even when these words are taken separately and by themselves, they merely express the circumstan-

ces under which the will was made, or the occasion of the making, or the inducement which led him to make, said will; that the operation was merely the occasion or inducement of making the will. We quote below 30 Am. & Eng. Ency. of Law (2 Ed.), pp. 553-4, as follows: A contingent or conditional will is one so drawn as to become operative only upon the happening or not happening, or upon the existence or non-existence, of a certain set of circumstances, during a certain period of time, so that if the contingency fails or occurs, the will is or is not entitled to probate, as the case may be. But the intention of the testator to make a conditional will must appear very clearly on the face thereof; and before any will can be defeated upon the ground that it is conditional, and that the condition has failed, it must be determined: First, whether the contingency is referred to as the occasion of making the will, or as the condition upon which the instrument is to become operative, or, in other words, whether the intention of the testator is to make the validity of the will dependent upon the condition, or merely to state the circumstances and inducements which led him to make a testamentary provision; and, secondly, if the language clearly imports a condition, whether it applies to and affects the whole will or only some of its provisions. Thus, if the testator makes his will conditional upon his death during a particular period, which he survives, the will does not take effect. But if the possibility of death, within such period, is merely the motive for making a will prior thereto, the survival of the testator after the expiration of the period mentioned will not render the will invalid.

In note 3 to above in 30 Am. & Eng. Ency. of Law (2d Ed.), page 554, the cases are given as illustrating what language will import a condition, and in note 4 to same, the following expressions have been held merely expressive of the circumstances under which the will was made,

and not conditional: "In the event of my death whilst serving in this horrid climate or any accident happening to me," citing *In re Thorne*, 4 Sw. and Tr. 36. "In case of any fatal accident happening to me, being about to travel by railway, I hereby leave," citing *Goods of Dobson*, L. R. I. P. & D. 88. "In case of my death on the way," citing 6 P. D. 17. Goods of M. Being about to travel a considerable distance, and knowing the uncertainty of life; citing Traver, etc., 9 Pet. (U. S.) 174. To provide for possible contingencies, citing *Kelleher* v. *Kernan*, 60 Md. 440. "Let all men know hereby, if I get drowned this morning, March 7, 1872, that I bequeath," etc., citing *French* v. *French*, 14 W. Va. 458. "According to my present intention should anything happen to me before I reach my friends in St. Louis," citing *Ex parte Lindsay*, 2 Bradf. (N. Y.) 204. "Being physically weak in health, have obtained permission to cease from all duty for a few days and in the event of my death occurring during such time, I do hereby will and bequeath," citing *Goods of Martin*, L. R. P. & D. 380. "I am going on a journey and may not ever return, and if I do not this is my last request," citing *Eaton* v. *Brown*, 193 U. S. 411 (referred to below in brief). "Realizing the uncertainty of life at all times, and the dangers of accident to travel, I leave this as a memoranda of my wishes should anything happen to me during my intended trip," citing *Redhead* v. *Redhead*, 83 Miss. 141.

We respectfully submit the language used in the cases last cited as illustrations is all very much more conditional and contingent than that used in the will of Henry J. Davis; and in view of this, and of the other cases to which we will call the court's attention, and in view of the rule of construction which prevails in such cases, we can hardly think that this court will decide that the present will is a conditional or contingent one. If possible the courts will construe a will as not con-

tingent; immediately following the text above, 30 Am. & Eng. Ency. of Law (2d Ed.), page 555, uses the following language: Rule of construction. The language of a will will be construed, if possible, as merely setting forth the circumstances which induced the testator to make a testamentary provision, rather than as creating a condition upon which it alone is to become operative; and, even where the language clearly imports a condition or the tendency is to restrain its operation to the particular provisions, rather than allow it to affect the entire instrument.

In note 1 on said page and note 1 on page 554 numerous cases are cited under the subheads, intention to make a will contingent must clearly appear, and construction against conditions.

Among other cases cited in said notes, are the cases of *Likefield* v. *Likefield,* 56 Am. Rep. (K. Y.), 909; and the case of *Eaton* v. *Brown,* 193 U. S. 411, 48 Law Ed. 732, both of which use this language: The rule is that courts will not incline to regard a will as conditional, if it can be reasonably held that the maker was simply expressing his inducement to make it, however inaccurate the language may be for that purpose, if strictly construed; and unless the words clearly show that it was intended to be temporary or contingent, it will be upheld.

*William Baldwin,* for appellants.

By the old standards, the old cases, the rule generally was, that where a testator referred to some special time, place or circumstances, as the starting out on a journey, or a spell of sickness, or some approaching danger, as relating to the making of his will, the courts applied it as a limitation of the intent of the testator and held that the intent was presumed to have passed away with the escape from the threatened evil, or the passing of the circumstances referred to; such is the trend of the

old English cases, and such rule was adopted generally in the courts of the United States, in the early cases.

The supreme court of this state acted in harmony with the ideas and cases of its time, and in the case of *Magee* v. *McNeill,* 41 Miss. 17, followed the rule then accepted.

The growth of the law since then has broadened, and the courts hold that because a testator refers to some threatened danger to him as relating to the making of the will, is no reason why his intent as expressed in his will should be limited to the period of the threatened danger.

The supreme court of Mississippi, has, like practically all of the courts of the United States, as well as the supreme court of the United States, adopted this view, and it is, so far as modern precedent can make it, the law; unquestionably the law of the land to-day. *Redhead* v. *Redhead,* 83 Miss. 143; *Buffington* v. *Thomas,* 84 Miss. 157.

Getting away from the decision of the supreme court of Mississippi, we find exactly the same growth and departure from the old rules of construction as regards contingent wills. 30 Am. & Eng. Ency. of Law, p. 553: 40 Cyclopedia of Law and Procedure, p. 1082.

*Leftwich & Tubb,* for appellee.

The authorities are abundant and the rule is well established, that a document of this sort cannot be admitted to probate as the last will and testament of the maker, unless it is clearly shown that the document was written *animo testandi,* and unless this testamentary intent clearly appears to the court, probate must be refused, and in establishing this testamentary intent, the paper itself must be looked to. It must stand or fall by what appears within the four corners of the document. *In re Richardson,* 94 Cal. 65, 118 Cal. 428, 62 Am. St. Rep. 244; *In re Richardson,* 94 Cal. 65;

*Eaton* v. *Brown,* 193 U. S. 411; *Magee* v. *McNeill,* 41 Miss. 17, 30 Am. & Eng. Ency. of Law (2d Ed.), 553-4.

1 Underhill, in his Law of Wills, in his treatment of contingent wills, sec. 8, says: "Page, in his recent work on wills, sections 60-64 inclusive, uses similar language giving numerous examples of cases held to be contingent, and others held not to be contingent." Both these authors, Underhill and Page, cite practically all of the cases referred to by counsel for appellants, including also the case of *Magee* v. *McNeill,* the case from our own court, 41 Miss. 17; *In re Thorn,* 4 S. W. & T. R. 36; *In re Dobson,* 1 L. R. P. & D. 88; *Traver* v. *Traver,* 9 Peters (U. S. 174), 9 Law Ed. 19; *Kelleher* v. *Kernan,* 60 Md. 440; *French* v. *French,* W. Va. 458; *Ex parte Lindsay,* 2 Bradf. (N. Y.), 204; *Cody* v. *Conly,* 27 Gratt. 313; *Skipwith* v. *Cabell,* 19 Gratt. 758, 783; 40 Cyc. of Law & Procedure, 1082, sec. 9; *Parson* v. *Lanoe,* 1 Vesey Sr. 189; *Wynn,* 2 S. W. & T. R. 147; *Roberts* v. *Roberts,* 2 S. W. & T. R. 337; *John Porter,* 2 P. & D. 22; *Robinson,* 2 P. & D. 171; *Lindsay* v. *Lindsay,* L. R. 2 P. & D. 459; *Hugo,* 2 P. & D. 73; *In re White,* Myr. Prob. Cal. 157; *Todd's Will,* 2 Watts & Sarg. (Pa.), 145; *Hamilton's Estate,* 74 Pa. 69; *Jeffries' Estate,* 18 Pa. Sup. Ct. 439; *Damon* v. *Damon,* 90 Mass. 192; *Jacks* v. *Henderson* (S. C.), 1 Dessus. 543; *Wagner* v. *McDonald,* 2 Har. & J. 346; *Robnett* v. *Ashlock,* 49 Mo. 171; *Cowley* v. *Knapp,* 42 N. J. Law 297; *Maxwell* v. *Maxwell,* 60 Ky. (3 Metc.), 101; *Dougherty* v. *Dougherty,* 61 Ky. (4 Metc.), 25; *Vickery* v. *Hobbs,* 21 Texas, 570, — Am. Dec. 238; *Dougherty* v. *Holscheider,* 40 Tex. Civ. App. 31, 88 S. W. 1113; *Oetjen* v. *Deimmer,* 115 Ga. 1005, 42 S. E. 388; *Magee* v. *McNeill,* 41 Miss. 17; *Dan Sauzay* v. *Dan Sauzag,* 65 So. 273.

There is no rule better established than that the courts will not write a will for the deceased, but will enforce and construe the will already made. It matters not what the circumstances may be, nor the hardships that

may result; the court will certainly close its eyes to all these things, and construe the will as written, taking the very language of it in plain, ordinary acceptation. We need to cite no authority to sustain these rules. They are elementary and too well-established, and counsel for appellants certainly will not controvert them. We submit that this alleged letter of Henry J. Davis ought to be denied probate, if for no other reason, for the reason that it was made to depend upon the contingency of his death as a result of the operation he was then about to undergo. This case was heard below by one of the most careful and painstaking chancellors who ever adorned the bench in Mississippi; his decision is clearly right, and ought now to be affirmed.

SMITH, C. J., delivered the opinion of the court.

In the letter sought to be probated as his last will and testament, which the reporter will set out in full, Henry J. Davis expressly stated that he loved his wife dearly, and the inference is clear from the language used that he hoped she would return to him, and that he would not have "to give her up." Construed in the light of these facts, it is clear that he did not intend to make an unconditional bequest of his property, but one to take effect only in the event he "should . . . not get over" the operation he was then about to undergo. That he intended this bequest to be a conditional one is made more certain by his use of the words, "As it stands to-day, I certainly do not want her to have it."

*Affirmed.*