## Walker, Admr., et al. v. Hibbard, et al.

(Decided November 7, 1919.)

Appeal from Kenton Circuit Court
(Common Law and Equity Division).

1. Wills—Contingent Wills.—The following paper was a contingent will as the writer completely recovered from the operation: "Dear Aunt Mintie: On Sunday evening I go to St. Elizabeth's hospital to have a slight operation. I do not anticipate any trouble, but one never knows. If anything should happen to me, I want you please to do this for me, see that everything I have in the world goes to George B. Gomersall. He is dearer to me than anything in this world, and he deserves it. You may think this is too much, but I don't believe you will, and it is my wish."

2. Wills—Contingent Wills—When a Will Is Contingent.—If a will is so phrased as to clearly show that it was intended. to .take effect only upon the happening of the particular event set forth in the paper as the reason for writing it, or if it was written only to make provision against a death that might occur on account of or as a result of the specific thing assigned as the reason for writing the will it will be a contingent will.

3. Wills—Contingent Wills—When a Will Will Not Be Contingent.— But if the causes assigned for writing the will are merely a general statement of the reasons or a narrative of the conditions that induced the testator to make his will it will not be a contingent will although it may set forth probable or anticipated dangers or conditions that induced the testator to write it.

4. Wills—Contingent Wills—Doubt As To Which Class Paper Falls in Resolved in Favor of Permanent Wills.—If there is reasonable doubt as to whether the will was intended to be contingent or permanent the doubt will be resolved in favor of its permanency, or in other words, a will will not be treated as a contingent disposition of the testator's estate unless it clearly appears from the paper itself that it was so intended to be.

5. Wills—Contingent Wills—Intention of Testator—How Arrived At. .—The intention of the testator is to be gathered from the paper itself, but it is always admissible in arriving at his intention for the court to have the aid by extrinsic evidence of the circumstances situation and surroundings of the testator at the time the paper was written.

6. Wills.—A contingent will can not be revived by the parol declarations of the testator. A will written to meet a specific contingency and that has ceased to have any effect as a testamentary paper because the testator passed safely over the emergency it was intended to provide against, can not thereafter be revived by the retention of the paper or the declarations of the testator that it was his will.

7. Wills—Contingent Wills—Revocation of.—When a will has been written only to meet a present emergency the safe passage of the testator over the emergency works a revocation of the paper as a testamentary disposition of the testator's estate.

8. Wills—How a Revoked Contingent Will May Be Revived.—A contingent will that has become revoked by its own terms can only be revived by the execution of a new will in the manner pointed out in the statute, although the contingent will may be wholly in the handwriting of the testator and have been declared by him to be his last will.

CHARLES A. J. WALKER and GEORGE H. KATTENHORN for appellants.

S. D. ROUSE, R. C. SIMMONS, C. W. BAKER, JR., THORNE BAKER and MARTIN J. BROWN for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL—
Affirming.

The following paper was probated in the Kenton county court as the last will of Mame S. Long, who died in December, 1917, but on appeal to the circuit court, the law and facts being submitted by consent of parties to the judge, the decision of the county court was set aside and the paper rejected as a will:

"June 8th, 1917.

"Dear Aunt Mintie:—

On Sunday evening I go to St. Elizabeth's Hospital to have a slight operation. I do not anticipate any trouble, but one never knows. If anything should happen to me, I want you please to do this for me. See that everything I have in the world goes to George B. Gomersall. He is dearer to me than anything in this world, and he deserves it. You may think this is too much, but I don't believe you will, and it is my wish. If there is anything around the house you want of course it is yours. The sideboard belongs to Sam Long. You have been far better to me than I deserve, and I love you better than you will ever know. With very much love. Mame S. Long."

Mame S. Long, the writer of this letter, was a childless widow, having been divorced from her husband, Sam Long, in 1904. At the time of her death in December, 1917, she was about forty-six years old and George B. Gomersall, the beneficiary in the paper, was an unmarried man about thirty-three years of age. Shortly after the death of Mrs. Long this paper was offered for probate by Gomersall in the Kenton county court and its probate contested by the uncles, aunts, nieces and nephews of Mrs. Long, who were her nearest of kin and the persons to whom her estate, which amounted in value to about $60,000.00, would have passed under the statute of descent and distribution if she had died intestate.

The validity of the paper was contested upon the grounds that Mrs. Long was wanting in testamentary capacity; that its execution was procured by the undue influence of Gomersall; that the paper was a contingent will and void as a final testamentary disposition because the contingency upon which it was to become effective never happened.

It is upon this last named ground that the paper was rejected and its probate refused by the circuit judge who heard and disposed of the case.

It is conceded that Mrs. Long completely recovered from the operation to which she was about to submit when the paper was written and died some six months later from a cause entirely independent of and having no connection with the operation itself or the ailment to relieve which it was performed. And there being no dispute about this we will pass without comment the issues as to testamentary capacity and undue influence, although there was evidence to support both, and rest our decision on the determination of the question whether the paper in controversy is what is known in the law as a contingent will, because if it comes fairly within that class of testamentary paper described as a contingent will it never became effective as her last will.

But before coming to the discussion of this controlling feature of the case it will be appropriate to briefly set forth such facts and circumstances appearing in the record as serve to illustrate the surroundings of Mrs. Long at the time and before she wrote the letter and throw light on her intention in doing so as well as her relations with Gomersall, the proposed beneficiary of her bounty, so that a better understanding may be had of the situation of the parties, and the effect, if any, that should be given to her acts and declarations at the time the letter was delivered by her to Gomersall.

Mrs. Long some ten years before her death acquired the habit of drinking to excess intoxicating liquors and from that time until her death in December, 1917, she was frequently under the influence of liquor and was often found in a condition of helpless intoxication. And there is abundant evidence by a number of physicians, who treated her for this habit at different times from 1908 until her death, as well as by other friends and acquaintances, that when laboring under the effects of intoxicating liquor, as she frequently was, she was utterly incapable of transacting any business affairs and her conduct was totally destitute of the delicacy and refinement that characterized it when she was free from the influence of strong drink.

She had many relatives, among them a Mrs. Mary Shinkle, her aunt, and who was the "Aunt Mintie" to

whom the letter was addressed, who lived in or near Covington, but the relations between Mrs. Long and her kindred had become somewhat estranged on account of her dissipated habits that subjected them to much embarrassment and distress, although they continued as best they could under the circumstances to exercise a kindly and watchful care over her, and especially did her aunt, Mrs. Mary Shinkle, to whom it appears Mrs. Long was deeply attached, continually do everything in her power to correct the unfortunate habit of her niece and save her from the painful notoriety that her conduct produced.

It also appears that Mrs. Long met Gomersall for the first time in September, 1916, at the house of a mutual friend in the city of New York whom they were both visiting, but was only in his company on this occasion for a very short while. Soon after this she returned to her home in Covington and about a month afterwards Gomersall, whose residence was in Cincinnati, Ohio, called her over the telephone to inquire after her health, being influenced, as he says, to make this inquiry by the fact that during their brief meeting in New York Mrs. Long was suddenly taken so ill as to make it necessary that she should be removed from the hotel dining room where the Phelps, Gomersall and Mrs. Long had gone to take dinner, to the home of the Phelps or her hotel. Soon following this inquiry and as a result of the conversation over the telephone he visited her at her appartments in Covington and thereafter and until just before her death met her probably two or three times a week, frequently taking her to theatres, dinners, picture shows, races and other places of entertainment.

During this time Gomersall saw or had many opportunities of seeing her under the influence of strong drink and on several occasions drank with her intoxicating liquor, thus becoming thoroughly apprised of her unfortunate habit. It further appears that in April, 1917, they entered into an engagement to marry upon the condition imposed by Gomersall that Mrs. Long should be able to abstain from the use of intoxicating liquor for a period of as much as six months. It is also made clear by numerous letters wrtten by her to Gomersall that Mrs. Long became desperately infatuated with him and was willing to marry him at any time, but this event was

postponed from time to time presumably on account of her inability to refrain from the use of intoxicating liquor for the period required by Gomersall as the condition precedent to their marriage.

On June 10, Mrs. Long was taken to the hospital where the operation referred to in the letter was performed, and she left the hospital on June 21 fully recovered from the operation and its effects.

It further appears that the paper in question written by her on June 8 was retained by her at her apartment in Covington and delivered by her to Gomersall on June 24, just a few days after her return from the hospital.

When this paper was delivered to him no persons were present except Mrs. Long and Gomersall, and as he was the only witness who could or did testify as to what occurred on that occasion we will look to his evidence for an account of what was said and done:

"Q. What if any statement, did she make at the time of the delivery of that paper to you? A. She gave me this paper to read; I read it and handed it back to her. She said 'This is my will, you keep it,' which I did. . . . Look at the entire paper, including the signature; will ask you in whose handwriting the entire paper including the signature is? A. In the handwriting of Mrs. Mary S. Long. Q. In whose handwriting is the envelope? A. Mrs. Mary S. Long. . . . Q. Mr. Gomersall, where were you when Mrs. Long gave you that paper? A. I was leaving her home. Q. How happened Mrs. Long to give you that paper? A. We were discussing her return from the hospital. I had remarked how happy I was to have her back again. She commented on that, said 'To show you what I have done for you, I want you to read this.' She left and went in the other room, and came back with that paper. Q. How long before this was it that she went to the hospital? A. On June 10th, returned about 21st. Q. Gave you this paper about June 24th? A. Yes, sir. Q. She returned cured, did she? A. Yes, sir. Q. Was that letter in the envelope when she brought it from her bed room? A. She opened the envelope and took out the letter and handed it to me to read. Q. You mean she broke the seal of the envelope? A. She did, yes, sir. Q. Now, I would like you to give her exact words when she gave you that paper? A. After our conversation closed about her coming from the hospital, she says 'I will show you what I did for you;' she went to the other room, and

came back and handed me the letter opened. I read it; I then handed it back to her. I told her I was much beside myself when I read of that; I said that was very sweet and lovely. I handed it back to her; she says 'No, that's my will, I want you to keep it, it may prove valuable to you later on.' Q. Now, Mr. Gomersall, did you ever deliver that letter to Mrs. Shinkle? A. I did not. Q. What did you do with it? A. Took it home, and placed it among my effects. Q. Did you ever tell Mrs. Shinkle that you had the letter. A. I never had met Mrs. Shinkle, never knew her.''

Coming now to the law of the case we find that many opinions on the subject of contingent wills have been written, but we will only refer to what we conceive to be the leading cases on both sides of the question.

Taking up first the cases relied on by counsel for Gomersall, the earliest Kentucky case is Massie v. Griffin, 2 Met. 364. In that case Massie, a resident of Anderson county, Kentucky, made a visit to the state of Missouri, in August, 1850, and while there he wrote and delivered to one Allen the following paper:

'' 'It is my wish that all the notes and accounts found among my papers (vs.) my brothers, should be destroyed or handed over to them. Should I never return. I also desire that each of them should have two hundred dollars in addition, and the remainder of my property divided equally between the heirs of Thomas and John M. Massie, at their respective ages of 18— should it be deemed judicious to do so.' The remainder of the paper is the expression of two wishes. First, that a Mr. Bright should have every indulgence on the amount due for a farm. Second, that Mr. J. B. Allen and Dr. Wm. H. Lee, would attend to his affairs.''

After this he returned to his Kentucky residence and in 1853 went to Missouri again for a short visit and again returned to Kentucky, going back to Missouri in 1855 and died in Kentucky as he was returning home from this trip. After his death this paper, which was found among his papers, was offered for probate in the Anderson county court and its probate resisted upon the ground that it was a contingent will executed for a temporary purpose and was to become a permanent disposition of his estate only on the contingency that Massie never returned to his home in Kentucky after the paper was written. It will be observed that the words ''should

I never return," which are the only expressions tending to establish the contingent character of the paper, are to be found about the middle of it and following the disposition the testator wished should be made of certain notes and accounts he held against his brothers; that in a subsequent paragraph of the will he disposed of other parts of his estate, and the court ruled it was not a contingent will because the only words it contained indicating its contingent nature were not applicable to the whole writing but only to a part of it.

That it was held not to be contingent for this reason only is made plain by what is said in the case of Maxwell v. Maxwell, 3 Met. 90. The Maxwell opinion was written by the same judge who wrote the Massie opinion and shortly afterwards, and both cases were considered by a court composed of the same members. In the Maxwell case the court in speaking of the Massie case said:

"The writing in this case is unlike that which was established as the will of Massie, in the case of Massie v. Griffin, decided at the summer term, 1859, of this court. In that case it was decided that the condition was limited to a single provision of the will, and was not applicable to the entire writing, and it was not therefore a contingent will. But here that portion of the writing claimed to be a testamentary instrument, is made in such terms as to render it totally dependent on a contingency whether it shall ever become a will. The contingency applies to the entire disposition. The two cases are, therefore, not analogous."

It is therefore apparent that the Massie case is not entitled to any weight in the disposition of the case we have, as here the contingency applies to the entire letter and everything that was said in it.

Another case relied on is Likefield v. Likefield, 82 Ky. 589. In that case Likefield in January, 1859, wrote the following paper:

"If any accident should happen to me that I die from home, my wife, Julia A. Likefield, shall have everything I possess, the house and lots and the money that is due to me, and for her to hold it as her own. Wm. A. Likefield."

He died at his home in March, 1881, leaving surviving his wife. The probate of this paper, which was found in his possession after his death, was contested upon the ground that it was a contingent will intended only to be

effective in the event the testator should die away from home. But the court in holding it not to be a contingent instrument said:

"The rule is, that courts will not incline to regard a will as conditional, if it can be reasonably held that the maker was simply expressing his inducement to make it, however inaccurate the language may be for that purpose, if strictly construed; and unless the words clearly show that it was intended to be temporary or contingent, it will be upheld. In this instance if the testator, by the words he used, referred to the possibility of his accidentally dying from home as a reason for making the will, then it must be maintained; but if he intended by them to show that he was then making only a temporary or conditional disposition of his property, it must fail, because the event named never happened."

In pointing out the distinction between this case and other cases referred to in the opinion holding that wills written to meet a particular condition were contingent wills the court said:

"It will be noticed in all the above cases, and in others not now at hand where the will has been held to be conditional that a specific contingency is named, and is either confined to a time certain, or a particular event.

"In this respect they are clearly distinguishable from the case now presented. The will in this instance fixes no limit or time, as during a particular journey, or for a particular length of time. No specific time or particular event is named. It refers to no particular expected calamity, and the words are general in their character; and this fact leads to the conclusion that the testator, who was evidently not an educated man or an adept in writing such instruments, did not intend the disposition of his estate to depend upon whether he died at or away from his home.

"It is shown in this case that the testator carefully preserved the paper in contest; that he examined it the year prior to his death; and while these facts can not constitute a statutory republication of it, yet they illustrate the intention of the maker of the instrument, as they tend to show that he believed he had disposed of his property by it, and while the word 'if' is an apt one to express a condition, yet the language used is so general in its character that it shows the testator intended it as words of inducement to the making of the will only,

and not that the disposition of his property should depend merely upon the place of his death.''

It will be noticed that the court was careful to say that no particular event was named as the reason for writing the will; that it referred to no specific expected calamity; and that in distinguishing it from other cases holding wills to be contingent the court said that in those cases a specific contingency was named and the will confined to a time certain or a particular event. That case is therefore clearly distinguishable from this one, and the opinion also makes it plain that it was not the purpose of the court to depart from the rule that a will would be held contingent when it appeared to have been written only to meet a particular event.

. Bradford v. Bradford, 4 Ky. Law Rep. 947, is another case in which a will sought by the contestants to be given a contingent effect was held not to be a contingent will. In that case the will read:

'' 'Being in the full possession of all my mental faculties, but in feeble health, and about to start upon a long journey, and subject to the common casualties of others, I deem it prudent to provide for the disposition of my property in case I should not return.' Then follows the unconditional disposition of his property.''

And the court said:

''It is contended that the words, 'in case I should not return' rendered the instrument contingent, and as he took the journey and returned without casualty, it is void and inoperative as a testamentary paper. These words do not constitute a condition upon which the will is dependent.

''In connection with the other words quoted, they simply set forth the circumstances which induced him to make his will before his departure for fear he might never return. The supposed condition is alone connected with the motive and reasons for the prudence he deemed it his duty to exercise, and it is evident he did not intend to say 'in the event I do not return then I made the following disposition of my property or wish it disposed of in a particular mode;' but that he had doubts of his return, which arose from his physical condition, the long journey he was about to take and the casualties which so often occur to travelers, and for these reasons he absolutely disposed of the whole of his estate without any conditions whatever.''

In that case it will be observed that no particular event or specific contingency was assigned as a reason for making the will. The reasons why it was written are general in their nature and such as are often found in statements at the beginning of wills setting forth why the testator deemed it prudent to make a disposition of his estate. Lacking as this will was in the distinguishing features generally regarded as essential to constitute a contingent will it is not authority against the construction we will give to the will now before us.

Forquer's Estate, 216 Penn. St. 331, 8 Am. & En. Ann. Cases, 1146, is another case in which a will was held not to be contingent. The will there in question was written by Forquer in November, 1882, at his home in Butler, Pennsylvania. It read:

"I intend starting tomorrow morning to Bozeman, Montana, to see my brother, Joseph. Knowing the uncertainty and risk of the journey, know all persons that I do hereby will and bequeath all my personal property to my wife, Martha M. Forquer. And I as hereby devise my real estate to said Martha M. Forquer. . . . And should anything befall me while away or that I should die, then in that event all my estate, money, notes, property of every nature and description, both real and personal, are hereby assigned, conveyed, and set over to my wife for her sole benefit."

It further appears from the opinion that Forquer after writing the will delivered it to his wife, who retained it until his death. After his death the paper was offered for probate and its probate contested on the ground that it was a contingent will intended only to be operative if Forquer died away from home on the trip he was about to take. In holding that the will was not contingent the court said:

"In the case before us the language expressive of the contingency is, 'and should anything befall me while away or that I should die,' etc. The expression, 'should anything befall me while away,' standing alone, is clearly contingent. It evidently refers to the possible death of the testator while away, as no other event could befall him which would give effect to the disposition of his estate which he was then making. The testator would have expressed the same thought had he said 'and should death overtake me while away.' It clearly refers to his possible death while on his journey. We may well sup-

pose that the testator, by the disjunctive expression which follows, 'or that I should die,' meant to add something to what he had already said. He had already provided for the contingency of death while on the journey. We may assume that he meant to add something by the use of the language which followed, and if so, that he meant to make provision against the event of his death whenever it might occur.

"By the use of the disjunctive 'or' the provision which follows excludes the thought that immediately preceded, and has, we think, the same force and meaning as if it stood alone. To give it the meaning contended for by the appellants we would have to interpolate the qualifying expression, 'while away,' used in the preceding clause. But what warrant have we for doing this in order to give to the instrument a contingent character, which, if it exist, must clearly arise out of the writing as it stands? In other words, we conclude (1) that it does not clearly appear from the will itself, (2) that it can, by reasonable interpretation of its language, be construed to be absolute rather than contingent, and in either event, under the authorities, it is entitled to probate."

This case merely follows the general rule that where the reasons assigned for writing the will are general in their nature and it does not clearly appear that it was intended to be operative only during a certain period or until a particular emergency had passed it will be a permanent and not a contingent will. In this controlling feature it is easily distinguishable from the paper before us in this case.

Another case strongly relied on by the propounders is Eaton v. Brown, 193 U. S. 411, 48 Law Ed. 730. In that case the will which was held not to be contingent read:

"I am going on a journey and may not ever return. And if I do not, this is my last request. The mortgage on the King House, which is in the possession of Mr. H. H. Brown to go to the Methodist church at Bloomingburgh. All the rest of my property both real and personal to my adopted son. L. B. Eaton of the Life Saving Service, Treasury Department, Washington, D. C. All I have is my own hard earnings and I propose to leave it to whom I please. Caroline Holley."

The writer returned safely from her journey and died about six months afterwards. In the course of the opinion the court, after saying: "Courts do not incline to regard a will as conditional where it can be reasonably held that the testator was merely expressing his inducement to make it, however inaccurate his use of language might be, if strictly construed," proceeded to analyze the will and the circumstances surrounding the testator at the time it was written and then said:

"If her failure to return from the journey had been the condition of her bounty, an hypothesis which is to the last degree improbable in the absence of explanation, it is not to be believed that when she came to explain her will she would not have explained it with reference to the extraordinary contingency upon which she made it depend, instead of going on to give a reason which, on the face of it, has reference to an unconditional gift."

This case is but one among many illustrating the narrow line that separates contingent and permanent wills, thus often making it difficult for courts to determine in which class the paper before them should fall and emphasizes what the court said in this case that "each case must stand so much on its own circumstances and words." It is perhaps the strongest case relied on by counsel for Gomersall, but it may, we think, be distinguished from the one before us upon the ground that in this letter Mrs. Long expressed as plainly as language could make it that she was only writing the letter to meet a single emergency immediately at hand, while in the Eaton case it appears from the will that it was written in anticipation of a journey she was about to take to a distant state and to provide against death that might happen from any cause while on that journey. In other words, it was written to provide against the general probability of death and not to provide against a single specific and near at hand event that might result in death; and we cannot give it the controlling effect claimed for it by counsel.

Other cases relied on by counsel for Gomersall are Kellcher v. Kernan, 60 Md. 440; Skipworth v. Cabell, 19 Gratt. (Va.) 758; Redhead v. Redhead, 83 Miss. 141; French v. French, 14 W. Va. 458; Cody v. Conly, 27 Gratt. (Va.) 313. But as the ones we have quoted from fully illustrate the trend of the cases supporting the view

insisted on by counsel we need not extend this opinion with excerpts from these.

On the other side .of this question the leading Kentucky case is Maxwell v. Maxwell, 3 Met. 90. In that case Maxwell, a resident of Kentucky, was on his way home from a .trip to the south when the steamboat on which he was a passenger was lost in the Mississippi river. Maxwell having escaped this danger made his way to Memphis, Tennessee, and while there wrote his wife in January, 1857, this letter:.

"The ice is still running very bad in the river. I can't say when I will be able to get off from here, but I hope soon; as the weather seems to be moderating. The river is very low and navigation is very dangerous—so much so I feel that I should protect you in any emergency. I would not have had you with me for the world. If I never get back home, I leave you everything I have in the world.- The property I got by my first wife I wish you to return everything to her father."

The letter in due course of mail was received by his wife and shortly afterwards Maxwell returned to his home in Kentucky and lived there until his death in 1858. After his death the letter was offered by his widow for probate and contested upon the ground that it was a contingent will intended only to be effective if Maxwell never reached home. The .court in the course of the opinion, holding that the paper was a contingent will, said:

"Obviously the first duty of the court is to ascertain the real nature of the writing which is offered as the will. Is it an absolute and unconditional disposition of the estate of the writer, or is it what is commonly denominated a contingent will; or, to speak with more exact propriety, is it such a writing as may or may not eventually take place as a will, dependent upon the happening or not happening of a certain event?

"The question is, did Maxwell, when he wrote the letter to his wife, intend to, and did he actually make and publish that as his will at all event; or did he make the fact of its becoming his will depend upon the event of his getting back home? . . .

"The question recurs, what is the true nature, and what the proper construction, of the paper now before the court? The words of testamentary disposition are, 'if I never get back home, I leave you everything I have

in the world.' Considering the words alone it seems to us that they are words of as positive and express condition as can be. It is not perceived how a condition could be more plainly expressed. . . .

"He had just barely escaped with his life from a condition of intense suffering and imminent peril, as we learn from the accounts which form the staple of his letter to his wife. A large part of his journey was still before him. He expected soon to be again upon the Mississippi river, although he did not know when he would be able to leave Memphis. The ice was running badly. The river was very low, and navigation very dangerous —so much so that he felt he should protect his wife in any emergency. To what emergency or emergencies did he refer? What dangers were then in his contemplation? Undoubtedly the emergencies and dangers which he regarded as incident to the journey in which he was then engaged. He did not, at the moment, look beyond that. He did not then think of emergencies or dangers through which he might be called to  pass after that journey should be complete. The word *any*—the qualifying word of emergency—was not intended to include all the emergencies of life, but those emergencies only which might possibly arise before he should get back home. Evidently he thought if he returned to his home he could protect and provide for his wife as he should then think proper; but in the event that he should not get back, then he chose to protect her in the manner provided for in the letter.

"It seems to us that the conclusion is inevitable that Maxwell did not intend the writing before us to be his will, except in the event of his never getting back home. Whether it was eventually to take place as his will or not, was made by him, in his own words, to depend on the happening, or not happening, of that  particular event. Here was a contingency—a condition. The only question remaining is, did it happen? It did not. The result is that the paper never was the will of Maxwell."

Another case is Dougherty v. Dougherty, 4 Met. 22. In that case Dougherty in 1857 wrote with his own hand the following will:

"In the name of God, amen. I, James Dougherty, of the county of Franklin and state of Kentucky, hath this day made this my last will and testament, as I intend starting in a few days to the State of Missouri, and

should anything happen that I should not return alive, my wish is that all of my land and negroes, and all I leave behind me, after paying my just debts, be kept in the hands of the Bishop of the Diocese of Scott county, as trustee.''

He made the contemplated trip to Missouri, returned home and died in 1861. The court, in holding that it was a contingent will, said:

''In our judgment, the foregoing language used by the decedent in the outset of the paper, being unmodified and unrestricted by other words or expressions in the subsequent or remaining portions of the instrument, brings it directly within that class of instruments denominated 'contingent' wills, and intended to take effect upon the happening or not happening of a certain event.

''The words in relation to the trip to Missouri contain two ideas: the one a reason for making a will, and the other the conditions upon which the paper is to take effect as a will.

''The expression, 'as I intend starting in a few days to the state of Missouri,' refers to the contemplated trip as the reason for the making the will; and the remainder of the language, 'and should anything happen that I should not return alive, my wish is,' etc., makes, in unequivocal terms, a contingency or condition upon which the paper was to operate as his will.''

In both of these cases the court held the papers offered to be contingent wills, but in neither of them do the letters indicate so clearly as in the case we have the contingent nature of the instrument.

Other illustrative cases in which the papers offered were held to be contingent wills are: Morrow's Appeal, 116 Penn. St. 440; Dougherty v. Holscheider, 40 Tex. Civil Appeals 31; McGee v. McNeil, 41 Miss. 17; Hamilton's Estate, 74 Penn. St. 69.

In addition to the cases referred to in the opinion we have examined many others and find that there is no lack of harmony in the cases as to what constitutes a contingent will, and that the different conclusions reached by courts in this class of cases are due to the dissimilar circumstances surrounding the testators at the time the instruments considered were written and the various manners in which they are worded rather than to any conflict of opinion as to the requisites of a contingent will.

It may also, as we think, be fairly gathered from all the authorities that if the will is so phrased as to clearly show that it was intended to take effect only upon the happening of the particular event set forth in the paper as the reason for writing it; or putting it in other words, if it was written only to make provision against a death that might occur on account of or as a result of the specific thing assigned as a reason for writing the will it will be a contingent will; but if the causes assigned for writing it are merely a general statement of the reasons or a narrative of conditions that induced the testator to make his will it will not be a contingent will although it may set forth probable or anticipated dangers or conditions that induced the testator to write it.

It will be seen from this description of the two classes of wills that the distinction between them is so narrow that it is often difficult to decide in which class the paper in question should fall, and in some cases this has influenced courts to attach importance to the relation the beneficiary bore to the testator and to lean towards that construction most favorable to the natural objects of his bounty.

It is also quite generally held that if there is reasonable doubt as to whether the will was intended to be contingent or permanent the doubt will be resolved in favor of its permanency, or in other words, a paper will not be treated as a contingent disposition of the testator's estate unless it clearly appears from the paper itself that it was so intended to be; and the intention of the testator is to be gathered from the paper itself; but it is always admissible in arriving at his intention for the court to have the aid by extrinsic evidence of the circumstances, situation and surroundings of the testator at the time the paper was written.

Looking now again to the paper in the light of the authorities referred to and the principles announced by which we are to be guided in ascertaining the class in which it should be put we are convinced by the paper itself without the aid of extrinsic evidence that if a person not versed in the law of wills can write a contingent will Mrs. Long intended in writing this letter that it should have no effect if she survived the operation she was about to submit to and was only written to provide against the fatality that might follow it.

We are influenced to reach this conclusion by the fact that this letter contains every requisite that would make it only a disposition of her estate contingent upon her death as a result of the operation she was about to undergo. It will be observed that in the first two sentences of the letter she refers to the anticipated operation, and then says "if anything should happen to me," as the result of this operation, "see that everything I have in the world goes to George B. Gomersall." It seems plain from this that the only thought she had in mind in writing this letter was to give her estate to Gomersall in the event and only in the event she died from the effects of the operation. She did not intend when this paper was written that it should be a permanent disposition of her property or that it should be her last will no matter when or where she died or from what cause, but only that it should be her last will in the event she died in St. Elizabeth's Hospital as a result of the operation. Fear of the fatal result that might follow the operation was the moving cause and the only cause that influenced her to write it, and it was only this probable calamity that she wanted to provide for. It was a temporary disposition intended to meet a present emergency and when the emergency it was intended to provide against passed the paper ceased to have any force or effect. This letter is not susceptible of any other construction.

If she had said in the letter "I only intend this disposition of my estate to be effective in the event I do not survive the operation I am about to submit to" it would not manifest her purpose in writing it more clearly than the words she employed.

That she was deeply attached to Gomersall at the time this letter was written the expressions of affection for him that it contains leaves no room for doubt; nor is it to be questioned that if she died as the result of the operation she intended that Gomersall should have her estate. But this expressed intention of the disposition which she desired to make of her estate in the presence of the impending operation can not be extended by any reasonable construction into an expression of her intention that Gomersall should be the beneficiary in the event she survived this operation. There are no words in the letter from which it can be fairly inferred that it was

intended to be more than a contingent will, to become effective only upon the happening of the event to provide against which it was written. Nor is there anything in the paper to leave the impression that her reference to the operation was merely a statement of reasons or narrative of conditions such as are commonly found in wills as matter of inducement tending to show why they were written. On the contrary the entire paper shows that Mrs. Long had in mind only one reason for writing the letter and that was the fear that the operation might prove fatal.

There is, too, another feature of this letter that shows in a very conclusive way, as we think, that it was written only to meet and carry her desires beyond the emergency she was about to face, and that if she passed safely through the ordeal the service the letter was intended to perform was finished.

It will be observed that this paper does not contain as wills usually do a direct devise or gift of property to Gomersall but is a request or direction to her aunt Mintie to see that Gomersall got all her property in the event she died as the result of the operation. If she survived the operation it is clear that the request or direction to her aunt Mintie could have no force or effect whatever as it was only to be effective in the event she died under the operation.

The correctness of this being, as we think, beyond dispute it would seem to necessarily follow that when Mrs. Long recovered from the operation the wish expressed that Gomersall should have her estate also became inoperative, because the direction to her aunt and the devise to Gomersall are so coupled together that when one failed or became inoperative so did the other.

It would thus appear that the effectiveness of the direction to her aunt and the devise to Gomersall were each equally and alike dependent on the contingency that she should not survive the operation and when she did both became at once and by virtue of her survival inoperative and void.

The remaining question in the case is the competency and sufficiency of the acts and declarations of Mrs. Long at the time she delivered the letter to Gomersall to convert into a permanent will what was intended to be and was when written a contingent will.

Upon this feature of the case there is no disagreement in the authorities, and a few cases will be sufficient to illustrate the views of the courts that have considered it.

In the Maxwell case before referred to, as in this, it was insisted that the declarations of Maxwell after his return home that the letter written to his wife was his will, were sufficient to make it his last will although it was not so intended to be when written; but the court in rejecting the admissibility of this evidence for the purpose intended said:

"It was stated by some of the witnesses that he said he still had that will; that it was his will, and he intended to keep it; and that his relations never should have any of his estate.

"It is not to be doubted that these conversations, or statements, referred to the letter of the 25th of January, 1857, written from Memphis to his wife, now propounded as his will.

"It is well established that the letter and signature are wholly in the handwriting of Maxwell.

"Now, are these parol declarations, proved as they are altogether by parol evidence, sufficient to make an instrument a last will and testament, which otherwise never was and never could have been a will?"

The court then referred to the statute providing how wills may be executed and revoked which are the same as sections 4828 and 4834 of the present Kentucky Statutes. Then in answer to the argument that as the will was wholly in the handwriting of the testator the declarations that it was his will were sufficient to revive it without going through the form of rewriting it, said:

"When the paper is produced, it is seen that it is never to be a will except upon the happening of a contingency therein plainly expressed. The contingency is the peculiar and distinguishing feature of the paper. It is in writing. And now the effort is to change or destroy that by the parol declarations of Maxwell, proved by parol evidence. To allow this would be strikingly within all the mischiefs which we know the statute was intended to guard against.

"We do not suppose it will be contended by any one that Maxwell, at any time, when speaking of this paper now said to be a will, intended to re-execute it, or believed that he was re-executing it. Certainly no act of

his was done, or word said, with the intent or purpose, at the time, of re-executing the will. How, then can it be said that he did re-execute it?''

To the same effect is the Dougherty case above quoted.

In the Forquer case, *supra,* Forquer, after his return from the trip in contemplation of which he wrote his will and gave it to his wife, on more than one occasion declared it to be his will and committed it to the custody of his wife until such time as it would be necessary to probate it. The question was whether this extrinsic evidence was admissible to establish the paper as his last will in opposition to the effort to show that it was merely a contingent will, and the court in holding the evidence inadmissible said:

''But we have not been referred to any authority which holds that the character of a will, as being contingent or otherwise may be determined or any doubt thereof solved by the introduction of extrinsic circumstances such as those referred to. The court, in a proper case, may be aided by evidence of the circumstances surrounding testator at the time of making his will, so as to put itself as nearly as possible in his place at the time the will was executed, but even this cannot be permitted to affect the construction when the language is clear and unambiguous. To be governed or even aided by the subsequent declarations of a testator in determining his intentions as already written in his will would be a precedent attended with much danger, tending to inject into the will an intent possibly not written therein, and thus to depart from the strictness of the rule which requires wills to be in writing. The meaning of the language of the will might thus be made to depend, in some degree, not on the intention of the testator at the time the will was executed, but on what he afterward said about it under circumstances in which no testamentary import should be predicated of his words.

''All the evidence, therefore, in the case at bar, of the subsequent declarations of the testator to the effect that he had made a will and given his property to his wife, and which was received under objection is excluded, and the objections thereto sustained.''

The rule declared in these opinions and other like ones must be correct or else there could not be such an

instrument known to the law as a contingent will as distinguished from a permanent or last will, because the sole and only reason for assigning a place in the law of wills to contingent wills is that they become worthless and ineffective for all testamentary purposes unless the contingency happened that they were intended to provide for.

When the emergency they were written to meet has been safely passed this condition works of itself the revocation of a contingent will as effectively as if the testator had destroyed it or written across its face with his own hand: "This will is hereby revoked," and signed the revocation himself.

It is true that the statute in section 4833 provides that a will shall not be revoked unless "by a subsequent will or codicil, or by some writing declaring an intention to revoke the same, and executed in the manner in which a will is required to be executed, or by the testator, or some person in his presence, and by his direction, cutting, tearing, burning, obliterating, cancelling or destroying the same, or the signature thereto, with the intent to revoke." But this statute was only intended to point out the manner in which a valid, subsisting will might be revoked and can have no application to a paper like the one here in question that ceased by its own terms to have any existence as a will immediately upon the recovery of the testator from the operation; although we do not mean to say that the statute would not apply to a contingent will before the happening of the contingency; that question is not here.

Our statute in section 4828, also provides that:

"No will shall be valid unless it is in writing with the name of the testator subscribed thereto by himself, or by some other person in his presence and by his direction; and, moreover, if not wholly written by the testator, the subscription shall be made or the will acknowledged by him in the presence of at least two credible witness, who shall subscribe the will with their names in the presence of the testator, and in section 4834 that:

"No will or codicil or any part thereof, which shall be in any manner revoked, shall, after being revoked, be revived, otherwise than by re-execution thereof, or by a codicil executed in the manner hereinbefore required; and then only to the extent to which an intention to revive the same is shown thereby."

In Stewart v. Mulholland, 88 Ky. 38, in construing these statutes the court said:

"That a will once revoked can only be revived by a re-execution of the instrument in the manner pointed out by the statute. It is in fact the making of another will and must be executed in the same manner in which the original will was required to be executed."

Whether the statute providing how a revoked will may be revived should have any application to a contingent will that had become revoked by its own terms it is not necessary to determine, because it is plain that when from any cause a paper has ceased to have existence as a will there must be a new will executed to take its place or the person will die intestate.

It therefore follows that the paper here in question having been revoked for the reasons and at the time heretofore stated the testamentary disposition therein named could not thereafter be revived except by the execution of a new will in the manner provided in section 4828 of the statute.

Not being intended to be when written the last will of the testator unless she died as a result of the operation she could not make it so by the mere act of delivering it to Gomersall or by her declarations that it was her last will.

It follows from what we have said that the circuit court did not err in holding that the paper offered by Gomersall was not the last will of Mrs. Long.

Wherefore the judgment rejecting it is affirmed.