265 P.2d 404

**ELLERBECK v. HAWS.**

No. 8010.

Supreme Court of Utah.

Dec. 31, 1953.

Rawlings, Wallace, Roberts & Black, Grant Macfarlane, Salt Lake City, for appellant.

Backman, Backman & Clark, Le Grand P. Backman, Milton Backman, Salt Lake City, for respondent.

CROCKETT, Justice.

Is the following an absolute will?

"Sept. 29, 1951

"To whom it may concern:

"Being in the Holy Cross Hospital from digestive and other troubles, *in the event I do not survive*, Mrs. Ruth Clayton Haws is to take total charge of my home and such little business as may exist there. Further, she is to have my complete portion of the estate left by my father, namely Witton W. Ellerbeck.

"Ben B Ellerbeck

"P.S. I appoint Mrs. Ruth Clayton Haws to serve as executrix without bond.

"B. B. Ellerbeck" (Emphasis ours.)

█ The will was entirely written, dated, and signed by the hand of the testator and therefore meets the requirements for the execution of an olographic will.[1] The trial court admitted it to probate upon petition of its proponent, Ruth Clayton Haws, a cousin of the decedent. His brother, Witton B. Ellerbeck, who objected below, now appeals.

Objector's contention is that the emphasized phrase "* * * in the event I do not survive, * * *" plainly manifests that it was the decedent's intention that the will should be effective only if such condition were fulfilled; wherefore, he argues that because Ben. B. Ellerbeck recovered from that particular illness, the condition was not met and the document is not his will.

█ With respect to wills which recite the circumstances under which they are made, the authorities uniformly recognize a distinction between two classes of cases. The first is where the testator simply states the circumstances under which the will is created or gives the reasons for making it. Such recitals usually refer to the uncertainties of life, a contemplated trip, military service, death away from home, or before a particular time, but do not limit the will to become effective only upon the occurrence of such event.[2] Recitals of this character do not prevent the will from being effective in the event of death other than in accordance with the conditions referred to. The other class of cases deals with wills where circumstances such as the foregoing are referred to and the will expressly provides that it will be effective only on the condition that the testator does not survive the event referred to.[3] Under the latter class—generally referred to as contingent or conditional wills—if the condition referred to is not met, the will is generally held to be ineffective.

Although we find no dispute as to the principle just stated, in applying it to specific fact situations the line that separates contingent and absolute wills is ofttimes so tenuous as to make it difficult to determine in which class a given document should fall. This led the Supreme Court of the United States to observe in Eaton v. Brown,[4] "each case must stand so much on its own circumstances and words." In that case the language: "I am going on a Journey and may, not ever return. And if I do not, this is my last request." was construed as merely stating the reason or inducement for making the will; while on the other hand, in the case of Phelps v. Ashton[5] this wording: "Know all men by these presents that I, H. C. Ashton, Sr. being on the eve of leaving home for an indefinite time, and not

1. 74–1–6, U.C.A.1953.

2. See Annotation 11 A.L.R. 846, 853.

3. Id., p. 846 ff.

4. 193 U.S. 411, 24 S.Ct. 487, 488, 48 L. Ed. 730, reversing 20 App.D.C. 453.

5. 30 Tex. 344.

knowing what providence may ordain during my absence, do make and will this request in case of my death while absent" was held to evidence a contingency, and the testator having returned home before his death, the document was rejected as a will.

Despite the divergence of views in the "twilight" area between the absolute will, where the factual background is merely a recital, and the contingent will, where the condition is set up as limiting the circumstances under which the testator intends the will to be effective, the authorities uniformly recognize that if the will expresses an intent that it is to be effective only upon the happening of a contingency, when the condition fails, the will fails also.

Illustrative of this class of cases are: Dougherty v. Holscheider,[6] where the will provided: "Friend Jim, I am going to start to Monterey tomorrow to have a surgical operation performed on me, and possibly I may never get back alive. * * * The doctors have said that it would not be dangerous; but in case anything should happen, I want you to see what I have left." A second letter read: "I wrote you some weeks ago, and told you that I intended undergoing an operation, and that before doing so that I would write you and tell you what to do with my stuff in case, anything happened to me." The court held the will contingent, stating: "We think the words of the letter indicate clearly that it was written merely as an expedient in case of death resulting from the operation. In both letters he desires certain things done 'in case anything happened,' evidently in connection with the operation"; Davis v. Davis,[7] where the following was held to be contingent: "Should I not get over this operation, I want you and Papa to take charge of everything I've got"; and Ellison v. Smoot's Adm'r,[8] where textatrix had written a letter to her sister expressing despondency and stated: "If I can't live through it and anything happens to me I want you to have what I have." Testatrix died two years and four months later. The will was held to be conditional.

The Supreme Court of Kentucky very well summarizes the distinction between the two classes of wills in Walker v. Hibbard:[9] "* * *

if it was written only to make provision against a death that might occur on account of or as a result of the specific thing assigned as a reason for writing the will—it will be a contingent will; but, if the causes assigned for writing it are merely a general statement of the reasons or a narrative of conditions that induced the testator to make his will, it will not be a contingent will, although it may set forth probable or anticipated dangers or conditions that induced the testator to write it."

6. 40 Tex.Civ.App. 31, 88 S.W. 1113.

7. 107 Miss. 245, 65 So. 241, 242.

8. 286 Ky. 768, 151 S.W.2d 1017, 1019.

9. 185 Ky. 795, 215 S.W. 800, 806, 11 A.L. R. 832.

How do these tests apply to the document with which we are concerned and the circumstances of its creation? Deceased, Ben B. Ellerbeck, entered the Holy Cross hospital on the afternoon of September 27, 1951. Mrs. Haws visited him there September 29th and a discussion was had of his personal affairs. There was a "spur of the moment" decision to make a will as is evidenced by the fact that he did not even have at hand a clean sheet of paper, nor did he delay long enough to get one  He wrote the will over typewritten matter that appeared on a department store bill for shoes sold to Mrs. Haws, which she apparently took from her purse.

Mr. Ellerbeck spent a week in the hospital and was released. Mrs. Haws testified that she held the will in her possession until Ben returned home when she gave it to him saying: "Here is this will." And he said, "Well, I will show you where I will put it" and he put it in the cupboard where it was found the day of his death. He died the last day of the following April.

■■ The proponent failed to make any showing that the contingency referred to in the will had been met. The evidence and the findings are both devoid of any reference to the cause of death and there is no indication that Mr. Ellerbeck died of the sickness for which he was hospitalized. On the contrary the only testimony concerning the matter shows unequivocally that he recovered from it, which evidence was elicited from Mrs. Haws herself:

"Q. But in any event he finally recovered from this sickness, did he not?
A. I would say yes.
* * *
Q. And he appeared to be all right?
A. Yes."

There is nothing inherently incredible about this evidence, and, therefore, even if the trial court had desired to do so, we see no reasonable basis upon which he could have found to the contrary. The rule that the evidence and findings will be reviewed in the light most favorable to the determination of the trial court does not apply to the interpretation of the language or legal effect of documents, nor to the application of principles of law, but only to questions of fact.

■ Proponent further claims that the phrase "in the event I do not survive" refers only to the first sentence pertaining to her taking charge of certain business matters, but that the last sentence devising his portion of his father's estate was independent of such condition and was, therefore, an absolute will. This argument amounts to splitting hairs. A reasonable construction of the very terse document indicates that the condition applies to both sentences. It seems almost absurd to say that if a testator intended to make his will contingent he would have to precede every disposition and direction with the words "in the event I do not survive" or words of similar import.

Our attention has been directed by proponent to the general rules of construction governing wills, codified into our statutory law: "A will is to be construed according to the intention of the testator"; [10] and "of two modes of interpreting a will, that is to be preferred which will prevent a total intestacy."[11] He also urges that if the will is equivocal or ambiguous, the fact that when Mr. Ellerbeck returned home he kept it and put it in the cupboard could be considered as throwing light upon his intention to devise his property to proponent.[12] These rules, though valid, have their limitations. Were we simply at liberty to guess what the intention of the testator was at the time of death, we likely would conclude that he desired to give his property to Mrs. Haws. However, the laws of succession of property to the next of kin in a definite order have been centuries evolving and are grounded in the experience and wisdom of mankind; in order to change such descent, one must make a will in accordance with the requirements of statute. As this court said in Re Beal's Estate [13] "the rule * * * that the intent of the testator must be carried out does not authorize courts to make a new will to conform to what they think the testator intended * * * nor does the rule that testacy rather than intestacy is preferred relieve courts from the obligation to construe the language of the will according to the legal effect of the words used."

In that case, testator directed that his property go to certain legatees in the event his wife should die simultaneously with him or closely thereafter. Actually, his wife predeceased testator, a condition not provided for in the will, but he allowed it to stand as written. The court observed, "* * * because he allows his will to stand as written after the death of his wife does not necessarily mean that it is also his intention that the same legatee should succeed to his estate at his death fourteen months later."

The facts in the case of Walker v. Hibbard already referred to herein, are strikingly parallel to those of our case. There the deceased wrote the following letter:

"June 8th, 1917.

"Dear Aunt Mintie: On Sunday evening I go to St. Elizabeth's Hospital to have a slight operation. I do not anticipate any trouble, but no one never knows. If anything should happen to me, I want you please to do this for me. See that everything I have in the world goes to George B. Gomersall. He is dearer to me than anything in this world, and he deserves it. You may think this is too much, but I don't believe you will, and it is my wish. If there is anything around the house you want of course it is yours. * * *

"With very much love.

"Mame S. Long."

10. 74-2-1, U.C.A.1953.

11. 74-2-10, U.C.A.1953.

12. Barber v. Barber, 368 Ill. 215, 13 N.E. 2d 257.

13. 117 Utah 189, 214 P.2d 525, 527.

She entered the hospital June 10th and left it June 21st; on June 24th she delivered the letter personally to George B. Gomersall who read it, protested mildly, and handed it back to her, whereupon she said: "No; that's my will; I want you to keep it; it may prove valuable to you later on." She did not die until six months later, December, 1917.

The court considered both the substance of the will and the acts and statements of the deceased after her release from the hospital. In reasoning that the words "if anything should happen to me" made the will conditional, the court stated: "If she had said in the letter, 'I only intend this disposition of my estate to be effective *in the event I do not survive* the operation I am about to submit to,' it would not manifest her purpose in writing it more clearly than the words she employed." (Italics ours.) The court held the will to be conditional and that it had been revoked by the nonhappening of the contingency. With respect to her later declaration and delivery of the will to the beneficiary, it quoted an earlier Kentucky case,[14] "A will once revoked can only be revived by a re-execution of the instrument in the manner pointed out by the statute. It is in fact the making of another will, and must be executed in the same manner in which the original will was required to be executed." The attempted parol revival of the will was held to be without effect.

It seems a singular but interesting coincidence that the very words of Ben Ellerbeck's will are postulated by the Kentucky court as an example of the strongest language which could be used to evidence a contingent writing. Consistent with the above authorities and the reasoning set forth therein it appears that a correct analysis of the Ellerbeck document is that the introductory words, "Being in the Holy Cross Hospital from digestive and other troubles * * *" recite the reason for making the will and, taken in conjunction with the next succeeding words, "in the event I do not survive," show quite clearly that the writing was made to provide against a death that might occur as a result of the specific thing assigned as a reason for making it, that is, the illness for which he was hospitalized. This contingency, upon which the writing was to become decedent's will, did not occur, and the will therefore became invalid after Mr. Ellerbeck recovered. Neither his parol declaration as to what he would do with it, nor his placing it in the cupboard would fulfill the statutory requirements for executing a will. If what he did was intended as an attempted revival or republication, it was ineffective for such purpose. We therefore conclude that the instrument proffered as the last will of Ben B. Ellerbeck was not an absolute and permanent will, but was to take effect only upon a

14.  Stewart v. Mulholland, 88 Ky. 38, 10 S.W. 125, 21 Am.St.Rep. 320.

condition which did not eventuate. Hence, the purported will should be denied probate.

Costs to appellant.

McDONOUGH and WADE, JJ., concur.

WOLFE, C. J., not participating.

HENRIOD, Justice.

I respectfully dissent. The trial court decided the document in question was its author's binding will. Many times this court has said that the lower court's decision based on a factual situation will not be disturbed unless there is no competent evidence to support it. In this case, therefore, the majority is saying there is no such competent evidence. Many times this court has said that the trial court is in a better position to adjudge of the credibility of witnesses and the weight of the evidence. Here the majority opinion says the trial court erred in its appraisal thereof. Many times we have stated that testacy rather than intestacy is favored, and that we will construe ambiguous documents or those which may have words of dual interpretation, in favor of testacy rather than in favor of intestacy.

The writer of this dissent believes the words used by decedent are as consistent with the happening of the condition of the will as the contrary, and that the main opinion is confusing the terms "condition" and "contingency."

Mr. Ellerbeck set forth a condition which was satisfied, in my opinion, not a contingency that failed to happen. He did not say "if I die in the hospital." He did not say "if I die from digestive troubles." He simply prefaced a phrase "in the event I do not survive" with a statement of the facts that he happened to be in a hospital and that he was suffering from digestive *and other troubles*. He died in 7 months,—certainly from the digestive disorder *or other troubles*. There is no evidence that he died from some cause other than physiological troubles, such as being hit by a train and the like. The main opinion puts great weight in the testimony of a lay witness, unskilled in medicine, who simply said, in answer to leading questions, that she would say the decedent had recovered and that he appeared to be all right, which has no expert probative value that he died from something other than digestive or other troubles. The trial court obviously took no stock in what she said.

The fact of the matter is, that the man was sick, to such extent, that he was "nigh unto death" when he was hospitalized, he having died within 7 months. After he went home and the document was returned to him, so that he could have revoked it by tearing, burning, etc., he deliberately put it in the cupboard and told the beneficiary thereunder that he would show her where he would put it. He put it there and left it there, were it was found after death. His

statement and his act concededly could not revive a will no longer valid, but they could be convincing to a trial court in interpreting the intent of the decedent at the time he prepared the document and also in the interpretation of ambiguous language therein.

It appears that the main opinion also has chosen facts in a light most favorable to the loser in this case in arriving at its conclusion. Many times this court has said in similar situations that we must look at the facts in a light most favorable to the winner.

Instead of applying the elementary rules often enunciated by this court, which are pertinent in a case like this, it would seem that the majority opinion simply by-passes them in favor of an arbitrary interpretation of language obviously capable of different interpretations,—in favor of establishing intestacy rather than testacy.

The main opinion contends that there are no facts in the record indicating that decedent died of the sickness for which he was hospitalized. There is nothing in the record that indicates that he did *not* die of such sickness. It affirmatively appears that he was in the hospital because he was sick. His putting the will, unrevoked, in the cupboard is a significant fact, and the fact of death shortly thereafter is even more significant. Taken all together it is not unreasonable to conclude that he died of digestive or other troubles, satisfying the condition of the document which the lower court admitted to probate.