Lucille **FISCHER**, Appellant,

v.

Mrs. Martin **JOHNSON** et al., Appellees.

Court of Appeals of Kentucky.

Jan. 24, 1969.

Rehearing Denied June 20, 1969.

A. Walter Redmon, R. Davis McAfee, Edward T. Ewen, Jr., Louisville, for appellant.

Henry J. Burt, Jr., Robert C. Hobson, Louisville, for appellees.

WILLIAM DIXON, Special Commissioner.

This is an appeal from a judgment of the Jefferson Circuit Court refusing to order probate of a purported will.

Daniel R. and Nellie Peterson had been married for many years and accumulated an estate worth more than $43,000. They had no children and each executed a will leaving their property to the survivor. After a long illness, Nellie died on July 14, 1966, and Daniel died February 2, 1967. While visiting his wife at the hospital, Daniel met the appellant, Lucille Fischer, who attended his wife during her illness, and he became very much attached to appellant.

On October 10, 1966, Mr. Peterson wrote in his own handwriting to a lawyer who had prepared his and his wife's will and had done other legal work for the family, in words and figures as follows:

"Mr. Henry Burt
Attorney at Law
Kentucky Home Life Building
Louisville, Kentucky

Dear Henry:

I have thought this over very carefully the past few weeks. My relatives on my wife's side have never cared very much for me other than my mother-in-law. She would take from me and give to them. I think the attitude is that I have so many things and they have so little. After my wife's death, they have become very grasping, therefore, I think they deserve very little. Put these explanations in my Will if you think it advisable.

1. To my sister Ruth, $1,000.

2. To May Murphy—Nurse at Norton Infirmary, $1,000.

3. To my namesake, Daniel Boston, $1,000 to be invested in U.S. Gov. Bonds until he is 18 so his parents won't blow it.

4. The balance after funeral expense to be given to Lucille Fischer, an aid at Norton Infirmary. Any furniture, painting or other possessions to be disposed of as she wishes other than the items set out below. She is to be executrix without bond or surety.

5. Grandfather Table from the Freeman family to Clarence Freeman.

6. Grandfather Table, Blanket Chest from the Peterson family to Norman A. Johnson.

Some of my relatives will probably think this a little strange, but I cared for my mother-in-law for 27 years without any financial assistance from her son. I have provided a grave and stone for her burial. He can surely pay the rest. This division has partially been caused in the last few days when Mrs. Freeman began to pack her things for moving. Things that Nellie and I bought years ago and she used, she took to her granddaughters thinking they were her own. I told Nell I would never squabble with them over anything. I haven't. I stay away from home so they could take whatever they want. In the event this doesn't reach you before my death, try to make this as legal and binding as possible.

Sincerely,
Daniel R. Peterson"

This letter was offered and finally denied probate by the Jefferson Circuit Court which resulted in this appeal by Mrs. Fischer.

Mr. Peterson and his wife had previously executed a formal will drawn by their attorney and it appears that he had considerable knowledge of the requirements of drafting and executing a will, which is verified by the letter to his attorney.

On the same day that Mr. Peterson wrote the letter in question, his mother-in-law and her son, Colonel Clarence L. Freeman, were at his home selecting some furniture and belongings to take from Mr. Peterson's home. This appeared to make Mr. Peterson very angry, according to Colonel Freeman, and this may have accounted for the letter being written by Mr. Peterson on the same date to his lawyer concerning the disposition of his property.

On the 12th or 13th, three or four days later, Mr. Peterson visited with Colonel Freeman and was very pleasant and stated he was going to have to make a will since his wife had died.

According to William Weaver, a very close friend, Mr. Peterson had expressed an interest in leaving Mrs. Fischer a part of his estate but, also, according to Mr. Weaver, he had at no time ever told him that he left her any part of his estate by will.

The letter in question shows that it was not regarded by Mr. Peterson as a will but was simply a direction to his attorney, Mr. Burt, to write a will. It said, "Put these explanations in my will if you think advisable," and then he set out six items and to whom he wanted them bequeathed. The next sentence in the letter stated, "In the event this doesn't reach you before my death, try to make this as legal and binding as possible."

This letter was written three months and twenty days before Mr. Peterson's death. A will was prepared according to its instructions and given Mr. Peterson for execution and he visited the office of his lawyer who prepared it on four or five different occasions and made no effort to execute it or legalize it.

In the case of Nelson v. Nelson, 235 Ky. 189, 30 S.W.2d 893 (1930), it is stated:

"We take it there will be no disputing the fact that the determination of whether an instrument is testamentary in character depends wholly upon the intention of the maker, and that, in the absence of a testamentary intent, there can never be a will."

This case, in some respects, is similar to Walker v. Hibbard, 185 Ky. 795, 215 S.W.

800, 11 A.L.R. 832 (1919), where a woman was having an operation and directed her aunt to see that her boy friend received her property if she did not get well. But she did get well and this court held that her getting well destroyed the will.

In this case Mr. Peterson lived more than three months after writing the letter in question to his lawyer. He had a will prepared and delivered to him. It appears that he was a man of above average intelligence and having had experience in making a will, it may be assumed that he would have known much about the requirements of a will as the letter in question indicates. He picked up a proposed will from his attorney which had set out the dispositions of his property as directed in the letter and never executed it; also, at no time did he indicate to the man who was his closest friend until the day of his death that he had ever left Mrs. Fischer anything.

We are of the opinion that the letter in question was not testamentary in character at the time of the death of Mr. Peterson.

The judgment is affirmed.

All concur.