(No. 23212.—

GEORGE BARBER, Appellant, *vs.* MAY BARBER, Appellee.

*Opinion filed February 14, 1936—Rehearing denied April 10, 1936.*

LEE BOLAND, and JAMES S. BALDWIN, for appellant.

EVANS & KUHLE, for appellee.

Mr. CHIEF JUSTICE STONE delivered the opinion of the court:

This cause is here to review the decree of the circuit court of Macon county declaring a purported will to be the last will and testament of Fred L. Barber, deceased. The purported will was executed by Barber shortly before midnight on June 6, 1933. He died at 5:10 A. M. the following morning. He had been taken to the hospital on June 2 suffering from acute appendicitis. An operation revealed a ruptured gangrenous appendix. A condition of general peritonitis and toxemia, with attendant abdominal distention, high temperature, rapid pulse, much pain and some delirium, were the symptoms found. Morphine in one-quarter grain quantities, strychnine, digitalis and a saline solution were periodically administered hypodermically from then on until his death.

The appellant and the appellee, May Barber, brother and sister of the deceased, are his only heirs-at-law. The purported will devised all the property, part of which was real estate, to the sister. The instrument was admitted to probate as a will in the county court of Macon county and the appellant filed a bill to contest the same. The grounds for the contest were, that the deceased was not, at the time of the making of the purported will, mentally competent so to do or capable of understanding the nature of the act and making just disposition of his estate; that

the appellee exercised undue influence and fraudulent practices to induce the deceased to sign the instrument, and that the purported will was not properly made, published and attested. The cause was heard before a jury. Their verdict, upon special interrogatories submitted by the court, found that the testator, at the time of the execution of the will, was of sound mind and memory; that he was not under improper restraint or undue influence; that at the time he knew the contents of the instrument, which had been read over to him or its contents made known to him before he signed it; that the witnesses signed in the presence of the testator; that at the time the testator signed the instrument he was of sufficient memory and mind to understand the business in which he was engaged, remember the natural objects of his bounty and to recall the property of which he was possessed, and that the instrument was the last will and testament of the deceased.

The grounds upon which the appellant seeks reversal of the decree entered on the finding of the jury are, that the testator, at the time of the execution of the instrument, was not of sound mind and memory, and that he did not know the contents of the instrument. Errors are also assigned on instructions and argument of counsel.

We will consider first the question whether there exists in the record sufficient proof of knowledge on the part of the testator, at the time he signed the purported will, of the contents thereof to satisfy the requirements of the law. The general rule is that proof of the testator's signature to the will is *prima facie* evidence that he understandingly executed the same. (*Teter* v. *Spooner,* 305 Ill. 198; *Compher* v. *Browning,* 219 id. 429; *Sheer* v. *Sheer,* 159 id. 591.) In the absence of evidence to the contrary the law will presume that a person who executes a will does so with the knowledge of its contents. This, however, is a presumption which yields readily to evidence tending to show that such was not the fact. (*Purdy* v. *Hall,* 134 Ill.

298; *Keithley* v. *Stafford,* 126 id. 507.) It is also the rule in this State, based upon strong grounds of reason and justice, that where a will is written by one largely benefitted by it, such circumstance excites stricter scrutiny and requires stricter proof of volition and capacity. Under such circumstances the proof must be of such character as to give full and entire satisfaction to the court or jury that the testator was not imposed upon but that he knew what he was doing and the disposition he was making when he made his will. (*Purdy* v. *Hall, supra;* 1 Jarman on Wills, (14th Am. ed.) 42-45.) The undisputed evidence in this record is that May Barber, the appellee, wrote the will. There is no evidence in the record tending to show that the will was either read by the testator, read over to him, or that he was in any way informed of its contents or knew that the instrument he was signing was a will. The only evidence that a will had been prepared is that it appeared in the hands of May Barber at the bedside of the deceased. There is no evidence that he ever saw it previously or knew what it was.

Mabel Horrell, a nurse in attendance at the time, testified that when she first saw the will the appellee had it in her hand at the bedside of the deceased. She also testified that the deceased said, "I want to sign that paper;" that the appellee suggested to the witness that she call H. W. Fish, the hospital janitor, to witness the will, which the witness did. She also testified that it was at the request of the appellee that she and Fish signed as witnesses after the deceased had signed his name to the instrument. There is no testimony in the record that the word "will" was used either by the testator, the appellee or the witnesses to the instrument. Fish's testimony is that the nurse called him and that he signed his name to the paper at the appellee's request. There is no evidence in the record that the testator or the witnesses thereto knew that the instrument executed was a will. On the contrary, the evidence shows

that the instrument was not then read to the testator or information given him as to its contents, and that he was not told that the instrument he signed was a will. The deceased did not declare the instrument to be his last will and testament, and the only evidence that he knew of its existence was his statement that he wished to "sign the paper." It is significant that he did not characterize the paper as a will.

The fact that the purported will was in the handwriting of the appellee, the sole beneficiary, the failure to show that the testator knew that the instrument was a will or that he knew its contents, overcame the presumption, arising from the fact of its execution, that the deceased was informed or knew of its contents. This presumption having been overcome, it is incumbent upon the appellee to show that the deceased knew that he was executing a will and that he knew what disposition he was making of his property. There is no such evidence in the record. On the other hand, there is much evidence tending to establish that his physical and mental condition was such that he did not know what he was signing.

The evidence shows that by the 6th of June the absorption of poison into the system of the deceased had progressed to such an extent that he was at times delirious. Morphine was administered in one-quarter grain quantities approximately every three or four hours. At 7:30 on the morning of June 6 his temperature had reached 103.6 and his pulse was 148 and irregular. At noon on that day he had a temperature of 102 and pulse 160. At 4:00 P. M. his temperature was 103.6, pulse 150 and respiration 34. At 8:00 P. M. his temperature was 106, pulse 148 and respiration 44. At this time morphine and strychnine were administered. From 10:00 to 12:00 he slept at intervals. At midnight on the 6th, almost immediately after the signing of the purported will, further treatment of digitalis and strychnine was given, and by 1:00 A. M. of the morning

of the 7th the patient was unable to close his mouth on request to do so in order to hold the thermometer and his temperature had been taken under his arm. This registered at 104. At 4:00 o'clock that morning his pulse was too weak and rapid to count and at 5:10 he died. Evidence was offered on the part of the appellee to show that the deceased had previously expressed an intention to leave his property to her. However, such evidence does not avoid the application of the rule that the testator must know at the time he signed the instrument that it was his will.

It is also argued here that the appellant did not properly assign errors on the record, and that therefore the question of the condition of the deceased at the time the instrument was executed is not open for consideration here. The assignments of error made, cover the condition of the deceased at the time the will was made and are broad enough to cover appellant's contention in that regard.

At the close of all the evidence the appellant offered a motion to instruct the jury to return a verdict finding that the writing in evidence was not made, published and declared in the manner provided by law. That motion was denied. In this the court erred. The motion should have been allowed.

Other questions are raised on this record, but under the view we take of the one herein discussed it is not necessary to consider them.

It seems clear that under the proof in this case the deceased did not know that the instrument he signed purported to be a will. The decree is therefore reversed and the cause is remanded, with directions to enter a decree setting aside the probate of the will.

*Reversed and remanded, with directions.*