(No. 24450.

GEORGE BARBER, Appellant, *vs.* MAY BARBER, Appellee.

*Opinion filed February 17, 1938.*

216

LEE BOLAND, and JAMES S. BALDWIN, for appellant.

EVANS & KUHLE, for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

May Barber filed a petition in the county court of Macon county to probate a written instrument as the last will and testament of her brother, Fred L. Barber, deceased. Evidence was heard, and the county court, over the objections of George Barber, brother of proponent and the deceased, admitted the document to record. After a hearing *de novo,* upon an appeal prosecuted by George Barber, a person interested in the instrument, within the contemplation of section 14 of the act in regard to wills (Ill. Rev. Stat. 1937, p. 3194) the circuit court entered an order finding the instrument to be the last will of the decedent and commanding its admission to probate. From that order George Barber has prosecuted a further appeal to this court.

Fred L. Barber, a bachelor, in June, 1932, was forty-two years of age and lived with his unmarried sister, May Barber, in Decatur. He was a locomotive engineer employed by the Wabash Railroad Company. George Barber, a married brother, was also a resident of Decatur. For several years prior to June, 1932, Fred Barber's household had consisted of himself and his sister. May Barber had managed the household for her brother and their father until the latter's death in 1929, and, thereafter, for the former until his death. Barber and Wheeler G. Muckey, a close friend, likewise an engineer in the employ of the Wabash Railroad Company, had made plans to leave Decatur early in the morning of June 27, 1932, to attend a convention at Buffalo, New York. It was arranged that Muckey should call at Barber's home on the way to the station to take a train leaving Decatur for Buffalo about

3:00 A. M. Mrs. O. N. Freischlag, a friend of May Barber, and, who, with her husband, at one time resided in Barber's house, had accepted May Barber's invitation to stay with her the night her brother departed on his trip. About 2:00 o'clock in the morning of June 27, Fred Barber arose to prepare for his journey. Barber's sister and Mrs. Freischlag had also arisen and the former was preparing a lunch for her brother. At the appointed hour of 2:00 o'clock Muckey arrived and was admitted into the house by the decedent. Shortly thereafter Fred Barber summoned his sister and requested her to bring her guest into the living room. Barber then wrote the instrument in controversy. Before he had finished writing the two women entered the room. Upon the completion of the instrument Muckey and Mrs. Freischlag, at Barber's request, each signed it in the presence of the decedent. The document follows:

To whom it may concern:            "June 27, 1932.
   I am leaving for New York State this morning, and if anything should happen to me I request that everything I own both personal and Real be given to my sister Miss May Barber.

W. G. MUCKEY,                      FRED L. BARBER.
MRS. O. N. FREISCHLAG."

Prior to the execution of the foregoing document, and indicative of his intention, Barber had written the following memorandum which was admitted in evidence, subject to objection:

To whom it may concern:         "Decatur, Ill., June 11, 1932.
   It is my desire to make a will in legal form and file away, but until I do I will expect this to be my will. That everything I own will go to my sister May Barber, that is, all property personal, real or otherwise.                    truly,
                              FRED L. BARBER."

A few minutes after the signing of the instrument Barber and Muckey went to the railroad station. They were away about four days on the trip to Buffalo. Upon his return Barber continued in his regular employment until

his death nearly a year later, on June 7, 1933. He left surviving May Barber, his sister, and George Barber, his brother, his only heirs-at-law. Another instrument purporting to be a will, signed by Barber within a few hours of his death, named his sister as his sole beneficiary. The proof failed, however, to show that this will was understandingly executed. (*Barber* v. *Barber*, 362 Ill. 634.) Subsequently, on July 23, 1936, May Barber found the instrument bearing date of June 27, 1932, in a box containing letters of the deceased to his mother, other papers personal to her brother and a blank check book. In due course the instrument was offered for probate as a last will and testament.

Three witnesses, all railroad men, related conversations with Fred Barber both prior to and after June 27, 1932, in which the latter stated that he desired to make or had made provision for his sister, informing one that she had made a home for their late parents and had taken care of them, and that after their deaths she had continued to make a home for him. To another Barber explained that he and his brother George did not "get along," and to the third he remarked that his sister was getting old, that someone had to take care of her, and that it was up to him to do it.

Barber's property consisted almost wholly of real estate, stipulated to have an estimated value of $15,000, subject to a mortgage of $1300. The order of the circuit court admitting the instrument dated June 27, 1932, to probate on appeal from a like order of the county court was a final order and, since the document devised realty, appealable to this court. *Speer* v. *Josenhans*, 274 Ill. 237.

To obtain a reversal, George Barber, the appellant, makes several contentions. The first which requires consideration is that the document admitted to probate is not testamentary in its character and makes no testamentary disposition of the property of his brother. Appellant directs our attention to the informality, in several particulars, of

the document which he assails, among others, to the fact that it is addressed, "To whom it may concern:" secondly, that it purports to make a request instead of a disposition of his property, and, third, that the attestation does not stamp the document as a will. He also points out that evidence to the effect Barber designated the document as his will, or declared it to be such to the subscribing witnesses, is wanting. Section 2 of the act in regard to wills (Ill. Rev. Stat. 1937, p. 3191) provides that: "All wills, testaments and codicils, by which any lands, tenements, hereditaments, annuities, rents or good and chattels are devised, shall be reduced to writing, and signed by the testator or testatrix, or by some person in his or her presence, and by his or her direction, and attested in the presence of the testator or testatrix, by two or more credible witnesses, two of whom, declaring on oath or affirmation, before the county court of the proper county, that they were present and saw the testator or testatrix sign said will, testament or codicil, in their presence, or acknowledged the same to be his or her act and deed, and that they believed the testator or testatrix to be of sound mind and memory at the time of signing or acknowledging the same, shall be sufficient proof of the execution of said will, testament or codicil, to admit the same to record," etc. The foregoing section does not require any specific form of words in the drafting of a will. An instrument in writing, irrespective of its informality, made with the expressed intent of giving a posthumous disposition to a person's property is testamentary in character, and, if duly executed, is entitled to admission to probate. (*Austin* v. *First Trust and Savings Bank,* 343 Ill. 406; *Cunningham* v. *Hallyburton,* 342 id. 442; *Noble* v. *Fickes,* 230 id. 594; *In re Will of Tinsley,* 187 Iowa, 23, 174 N. W. 4, 11 A. L. R. 826.) Neither a formal attestation clause nor even words in addition to the signatures of the witnesses are prerequisites to a valid execution of a will. (*Cunningham* v. *Hallyburton, supra; Calkins* v. *Calkins,* 216 Ill.

458.) A clearly expressed wish of the testator in his will is equivalent to a positive direction or command. (*McCartney* v. *Osburn,* 118 Ill. 403.) Obviously, the instrument under review is susceptible of the construction that Fred L. Barber intended a testamentary disposition of his property. The document satisfies the requirements of our statute on wills with respect to a testamentary disposition.

Appellant's principal contention is that the document admitted to probate is a conditional or contingent will. He argues that the document was to become effective only on the happening of an event which did not occur, and that, therefore, the document did not become effective as a valid will. May Barber, the appellee, maintains, on the other hand, that the document is a general will. A conditional or contingent will takes effect as a will only on the happening of a specified contingency which is a condition precedent to the operation of the will. (1 Schouler on Wills, Executors and Administrators, (5th ed.) sec. 285; 28 R. C. L., Wills, sec. 121; 68 Corpus Juris, Wills, sec. 256; *American Trust Co.* v. *Eckhardt,* 331 Ill. 261.) If the contingency is referred to in the will as a reason for making the particular disposition of the property which is provided for and the disposition and the contingency are so related to each other that the one is dependent on the other the will is contingent. A will is not conditional, however, if the contingency expressed in the instrument is referred to merely as the inducement, by way of narrative, for making the will at the time it is made. (68 Corpus Juris, Wills, sec. 256; 28 R. C. L., Wills, sec. 121; 1 Schouler on Wills, Executors and Administrators, (5th ed.) sec. 285; *Forquer's Estate,* 216 Pa. St. 331, 66 Atl. 92; *Walker* v. *Hibbard,* 185 Ky. 795, 215 S. W. 800, 11 A. L. R. 832; *Ferguson* v. *Ferguson,* 45 S. W. (2d) (Tex.) 1096, 79 A. L. R. 1163.) In particular, if the language used in a will can reasonably be construed to mean that the testator refers to a possible danger or threatened calamity only as a reason for making

a will at the time, rather than as a condition precedent to the will becoming operative, such reasonable construction should prevail. (*McMerriman* v. *Schiel*, 108 Ohio St. 334, 140 N. E. 600.) To render a will conditional or contingent its language must clearly show that it was the intention of the testator to make a will which would operate only during a certain period or until a certain emergency has passed. (*Likefield* v. *Likefield*, 82 Ky. 589; *Forquer's Estate, supra; Cody* v. *Conly*, 27 Gratt. (Va.) 313; *Walker* v. *Hibbard, supra.*) Parol evidence is inadmissible to show that an instrument which in form is a general or absolute will was intended to take effect only upon a contingency. (*In re Will of Tinsley, supra.*) Conversely, parol evidence is admissible to show that the testator's intention was to make an absolute and not a contingent will. (68 Corpus Juris, Wills, sec. 256.) Specifically, evidence of the preservation of the document for a considerable time after the nonhappening of the contingency or the expiration of the time of impending calamity, is admissible as a circumstance to show that the testator regarded the contingency as relating to the motive inducing the making of the will, rather than as a condition to its becoming operative. (*McMerriman* v. *Schiel, supra.*) Courts do not incline to regard a will as conditional where it reasonably can be held that the testator was merely expressing his inducement to make it, although his inaccurate use of language, if strictly construed, might possibly express a condition. *Eaton* v. *Brown*, 193 U. S. 411; *Ferguson* v. *Ferguson, supra; Damon* v. *Damon*, 8 Allen (Mass.) 192; *Likefield* v. *Likefield, supra.*

This court has not had occasion to consider the precise issue presented other than to define a conditional or contingent will. (*American Trust Co.* v. *Eckhardt, supra.*) The authorities invoked by the parties disclose that courts in other jurisdictions have differed in their application of the foregoing well settled principles. Whether a particular will is conditional or unconditional is largely dependent

upon the factual situation presented. *Eaton* v. *Brown, supra,* a leading case on the subject of contingent wills, construed an instrument commencing: "I am going on a Journey and may, not ever return. And if I do not, this is my last request." The testatrix went on her journey, returned to her home, resumed her occupation, and died about four months later. In holding that the instrument was entitled to probate, Mr. Justice Holmes pointed out that the first sentence quoted expressed the fact which was on testatrix's mind as the occasion and inducement for writing it. The United States Supreme Court observed: "If her failure to return from the journey had been the condition of her bounty, an hypothesis which is to the last degree improbable in the absence of explanation, it is not to be believed that when she came to explain her will she would not have explained it with reference to the extraordinary contingency upon which she made it depend instead of going on to give a reason which on the face of it has reference to an unconditioned gift."

In *McMerriman* v. *Schiel, supra,* the testator's will, after devising his property, provided: "This in case that I meet with accident on this journey." The testator made his contemplated trip to Montana and returned safely to his home in Ohio where he lived for a period of a year and two months thereafter, without change in his circumstances or of the beneficiaries named in his will, and without having changed or revoked the will, although it remained in his personal custody, during all of such time. The court held, on these facts, that the testator intended the language quoted as a declaration of inducement and not as a condition precedent, saying: "There is nothing in the will itself, nor are there additional facts in the record, to indicate that an accident during the course of his journey to Montana, or within a reasonable time thereafter, would have had any reasonable or logical relation to his property or to the objects of his bounty. * * * It must be admitted that the

will of Joseph Schiel is far from being explicit in providing that a fatal outcome of his trip to Montana should be a condition precedent to the will becoming operative."

Similarly, in the case of *Forquer's Estate, supra,* the will construed commenced: "Butler, Nov. 10th, 1882. I intend starting tomorrow morning to Bozeman, Montana, to see my brother Joseph. Knowing the uncertainty and risk of the journey, know all persons that I do hereby will and bequeath," etc. A bequest of personalty and a devise of real estate followed, after which the testator employed this language: "And should anything befall me while away or that I should die, then in that event all my estate, money, notes * * * are hereby assigned, conveyed and set over to my wife." The contention that the words, "And should anything befall me while away or that I should die," rendered the will contingent was rejected. From a consideration of the language of the will itself, unaided by extrinsic evidence, the court held (1) that it did not clearly appear from the will that its operation was intended to be contingent, and (2) that it could, by a reasonable interpretation of its language, be construed to be absolute rather than contingent, and was, in either event, entitled to probate.

The will in controversy in *Likefield* v. *Likefield, supra,* contained the following provision: "If any accident should happen to me that I die from home, my wife, Julia An Likefield, shall have everything I possess," etc. The testator died at home twenty-two years later. In deciding that the will was unconditional, the court observed that it did not name a specific contingency and confine its operation either to a time certain or a particular event.

*In re Will of Tinsley, supra,* also supports appellee. Contemplating an extended visit to California, one J. Clark Tinsley, a resident of Des Moines, Iowa, prepared the following brief will dated September 2, 1915, witnessed by two persons, but, as in the case at bar, without an attestation clause: "In case of any serious accident, after my just

debts are paid, I direct that my aunt Miss Mary E. Clark, take entire charge of my estate for disposal as she sees fit." Tinsley met with no serious accident during his lifetime and died a natural death. Certain persons claiming to be heirs-at-law objected to the admission of the will to probate for the reason, among others, that Tinsley's intention in making the instrument was that it should become effective only in the event of his death while upon his contemplated journey, an event which did not happen. In rejecting the contention the Supreme Court of Iowa said: "In other words, counsel would have us construe the writing as if it read, 'I am about to make a trip to California, and if, by reason of any accident, I do not live to return to my home, then, and in that event, I dispose of my estate as follows.' But to do this the court must make a will for the testator, expressing an intent which is not to be found in the writing which he executed. Proof of extrinsic circumstances * * * cannot be permitted to show that the testator intended anything other or different than that which is to be found in, or implied from, the instrument itself. If the will be unconditional upon its face, it cannot be adjudged to be conditional or contingent upon the strength of parol testimony. It may well be that the contemplation of a long journey, and its possible dangers and exposures, suggested to the mind of the deceased the wisdom of providing for the succession to his estate in the·event of his death, and that acting upon this thought he prepared the paper in question. This would indicate no more than that the circumstances mentioned were the occasion for his act, and not at all that his death while on that trip was a contingency without which the will would not become operative." Likewise, in the present case, the mention of his impending departure indicated nothing more than that the trip to the convention at Buffalo was the occasion of Fred Barber's act rather than that his death while on the trip was a contingency without which the will would not become operative.

In *Watkins* v. *Watkins,* 106 S. W. (2d) (Ky.) 975, decided on June 15, 1937, the contention was made that the following introductory sentence of the instrument offered for probate as the will of one Watkins rendered it conditional or contingent: "In view of my trip to Kansas City, Missouri, for a short visit, I am leaving this memo Will in case of my passing away for any reason." The Court of Appeals of Kentucky held, however, that the testator was merely narrating an approaching event for the inducement of the making of the will, pertinently observing that the expression, "in case of my passing away for any reason," apparently did not refer solely to death during or as a possible result of the trip to Kansas City, but was sufficiently comprehensive in its nature to bring the case within the general rule that where the reasons assigned for writing the will are general in their nature and it does not clearly appear that the testament was intended to be operative only during a certain period or until a certain emergency has passed, the will is permanent and not contingent.

The appellant places reliance, however, on such cases as *Walker* v. *Hibbard, supra,* where the instrument offered for probate was a letter to an aunt reciting that the writer, a childless widow, forty-six years old, was going to a hospital for a minor operation and did not anticipate any trouble, but, if anything did happen to her she desired her property to be disposed of in the manner designated. The beneficiary was an unmarried man, thirty-three years of age, unrelated to testatrix, and whom she had known only a few months. Mrs. Long completely recovered from the operation to which she referred in her letter and died six months later from a cause having no connection whatever with the operation or the ailment to relieve which it was performed. The court held that Mrs. Long's clearly expressed intention was that her letter should have no effect if she survived the operation. Since the will was only

written to provide against the fatality that might follow the operation it was declared a contingent will.

*In re Poonarian's Will,* 234 N. Y. 329, 137 N. E. 606, is cited. There, the instrument denied probate as Hagop A. Poonarian's will disposed of rugs which constituted the capital assets of the testator. His will, made in his account book, executed just before a journey to Constantinople, purported to distribute these rugs, "if anything Happen to me in Constantinople or in ocean." Poonarian made his journey safely, returned and continued his rug business until his death some sixteen years later. The court pointed out that the will was of necessity conditional, since it could not be supposed that it would continue to be effective after the return of the testator and his immediate business needs for the rugs which were alone the subject of the will. The condition in the *Poonarian case* was attached to the substance of the gift and was not merely a statement of the inducement which led to the writing of the instrument. In short, the will was held conditional because it stated a specific hazard or contingency which was made a condition precedent to its operation.

The will in *Dougherty* v. *Dougherty,* 4 Metcalfe (Ky.) 25, read in part as follows: "I, James Dougherty, * * * hath this day made this my last will and testament, as I intend starting in a few days to the State of Missouri, and should anything happen that I should not return alive, my wish is that all of my land and negroes, and all I leave behind me, * * * be kept in the hands of the Bishop of the Diocese of Scott county, as trustee." Dougherty made his contemplated trip to Missouri, returned home and died four years later. In holding the will contingent the court pointed out that the language relative to the trip contained two ideas: (1) a reason for making a will, and (2) the condition upon which the paper was to take effect as a testamentary disposition. The court said: "The expression, 'as I intend starting in a few days to the State

of Missouri,' refers to the contemplated trip as the reason for making the will; and the remainder of the language, 'and should anything happen that I should not return alive my wish is,' etc. makes, in unequivocal terms, a contingency or condition upon which the paper was to operate as his will." This authority cannot avail appellant as the words, "If anything should happen" in the will in the present case are not limited, as in the *Dougherty case,* by the additional words, "that I should not return alive." Manifestly, Barber's contemplated trip to New York and the contingency of death were not mutually dependent upon each other.

*Morrow's Appeal,* 116 Pa. St. 440, 9 Atl. 660, is also relied upon by appellant. The will in that case, it appears, was written by a venerable farmer in anticipation of a short trip. In disposing of his property the testator wrote: "I am going to town with my drill and i aint feeling good and in case if i shouldend get back do as i say on this paper tomey and robert is to pay they last payment," etc. Morrow made his trip and returned safely to his home but died shortly thereafter from an illness contracted during the journey. His will was held inoperative and inadmissible to probate. The court construed the will to mean that a testament was to take place only if there was no return from the contemplated trip and that there was no will because the condition on which it was to come into existence had not occurred. "Whether the journey was long or short is not material," the court concluded, "it is the fact of the return which defeats the contingency."

Another case relied upon by appellant is *Oetjen* v. *Diemmer,* 115 Ga. 1005, 42 S. E. 388. The will in question made a disposition of the testator's property, "If my wife and myself should perish at sea in going to or returning from Germany." The will made another disposition of the property in case the wife survived the testator. Neither the testator nor his wife perished at sea, and the court held that the first of the alternative dispositions was ineffective.

In *Phelps* v. *Ashton,* 30 Tex. 344, invoked by appellant, the will recited that one Ashton, "being on the eve of leaving for an indefinite time, and not knowing what Providence may ordain during my absence, do make and will this request in case of my death while absent." The will before us does not purport to restrict its operation to the contingency of the testator's death while absent on his trip to New York.

We hold that the will of Fred Barber is not conditional or contingent. The introductory words, "I am leaving for New York State this morning, and if anything should happen to me," merely state the occasion inducing the making of his will on the particular day it was executed. Testator did not qualify the quoted language by adding, "on my journey to New York," and we cannot, under the guise of construction, interpolate such words in order to infer a contingency and thereby frustrate a clearly expressed legal intention. The extrinsic evidence admitted on the application for probate confirms the unconditional character of the testamentary disposition and in no way even tends to vary or control the operation of the language employed in the will.

Appellant's final contention is that the testimony of the attesting witnesses was insufficient to support the probate of the will. The ink used in the signatures of the subscribing witnesses was a different shade or color and composition from the ink in which the body of the instrument and the signature of Fred L. Barber were written. None of appellant's witnesses expressed the opinion, however, that one ink had been put on the instrument at a later time than the other. In particular, a professor of chemistry at Milliken University made a chemical analysis of the document but there is no intimation in his testimony that the two inks were placed on the instrument at either different times or places. Certain portions of Mrs. Freischlag's testimony are isolated and scrutinized. On direct examination in the county court, Mrs. Freischlag, in answer to the question,

"I wish you would state what Fred Barber said to you at that time, if anything," replied: "We stepped into the room. Fred was writing and he said, 'I am writing a note leaving this to May in case anything should happen to me to protect her. Would you mind signing it.'" On cross-examination, when interrogated as to what happened when she entered the room, the witness said: "Fred was writing and had his head down. *As near as I can remember he said,* 'I am writing this little note which I generally do when I leave in case anything happens to me to protect May. Would you mind signing.'" In the circuit court Mrs. Freischlag testified that she did not remember the precise words spoken, adding, "After we got into the room he [Barber] just made a few remarks that he was writing a note in case anything happened to him to protect May and would I mind signing it." Muckey testified that Fred Barber requested him to sign but the words used were not stated. Other minor discrepancies in the testimony of both Muckey and Mrs. Freischlag are noted. The fact that the witnesses did not assume to remember the exact words spoken on an occasion more than four years prior to the day they testified does not impair their testimony. Moreover, the statement written by Fred Barber on June 11, 1932, effectively rebuts the inference of fraud levelled against the subscribing witnesses. One of them was a social-service worker and the other a locomotive engineer, and both lived in Decatur. Mrs. Freischlag stated that she was not acquainted with Muckey prior to June 27, 1932. The trial court saw and heard these witnesses and, further, had the benefit of observing them under fire on rigorous cross-examination. The discrepancies mentioned are insufficient to warrant us in disturbing the conclusion that the witnesses attested the will in conformity with the law.

The order of the circuit court is affirmed.

*Order affirmed.*