WILSON *v.* HIGGASON.

4-7315                                          178 S. W. 2d 855

Opinion delivered March 27, 1944.

*DuVal L. Purkins* and *C. T. Sims,* for appellant.

*Paul Johnson* and *Lamar Williamson,* for appellee.

McHANEY, J.   Reese Preston Pye died in Drew county, Arkansas, on September 8, 1941, unmarried and without issue. The primary question presented by this appeal is whether the following instrument in the handwriting of said decedent should have been admitted to probate as a holographic will:

"Mch. 10th, 1929

"This is merely a copy of a letter that I have sent to Lillie Higgason.

"My Dear Lill:

"While I was sick in the hospital recently, I thought of things that I felt like I should have already done or attended to for of course I didn't know whether I would get well or not so I promised myself that if I ever got well and able again, I would not put off doing a few things that I felt like I should do. Now Lillie since I have made you my beneficiary in all my insurance I want you, in event that I should die any time soon, to collect all my insurance and if I have any money left anywhere I would want you to get it all together and divide it equally among, your mother, Eddie, Mattie Myrtise's heirs, Bill, Lauree and yourself. I would also want any and all money that might be collected for any property that I might have an interest in, to be divided the same way. Now in case of my death any time soon, I would want Myrtise's part or part of it anyway, to go towards paying some of the expenses of her sickness and death but, should those bills be already paid, I would want it to go to Ned and Olive, Ned to take charge of it, and let Olive have her's as he saw fit. Of course I would want all of my personal debts paid first thing, and some day I want a little tomb put at my little baby's grave. I would have had it done long ago if I could have done it myself.

"Now I feel like this is about as near fair to my brothers and sisters as I could do it, and I'm just doing this so in case I should die anytime soon you would know how I would want my little mite disposed of and I have confidence enough in you that I am satisfied you will do it like I have suggested.

"I feel now that I would prefer being buried at Old Beulah.

"Yours,

"Reese Preston Pye."

Said instrument was sent by decedent to Mrs. Lauree Wilson at El Dorado, Arkansas, with a letter to her

dated March 22, 1929, addressed to "Dear Lauree," and reading: "I am sending you a copy of a little document that I have sent to Lill. I have felt for some time that I should do this. You may read it if you want to and it will explain itself. I am sending you the copy to keep so in case anything should happen to me some of the rest of you would know what I have written her to do.

"I know it might sound kinder silly to you all, but it will give an idea of what I would want done if anything should happen to me. Of course I want to live as long as possible, but we don't know what might happen to us this day in time.

"It has been raining here for several days, but it looks pretty and clear today.

"I am thinking of going to Houston for a few days. May go tomorrow.

"I wrote you a letter a day or two ago so will close for this time.

"Love to all,

"Reese."

Appellants and appellees are the collateral heirs of decedent, Mrs. Wilson and Miss Higgason being his nieces, the latter having been appointed administratrix of his estate, on the representation that he died intestate, by the Drew probate court.

The trial court refused to admit said instrument to probate, although it was in the genuine handwriting of decedent, so established by evidence as required by law.

Assuming for the purposes of this opinion without so deciding, that said instrument is testamentary in character and that it is not a copy within the holding of this court in *Dodd* v. *Holden*, 205 Ark. 817, 171 S. W. 2d 948, still we are of the opinion that the writing here offered was properly rejected for probate as a will for the reason it was a contingent or conditional will, wherein the contingency or condition did not happen as provided therein. Contingent wills are those "drawn to take effect only

upon the happening of a specified contingency; . . . Such a will is operative if the contingency happens or occurs, but its operation is defeated by the failure or non-occurrence of such contingency, . . . " 68 C. J., "Wills," § 256D. In 28 R. C. L., p. 166, § 121, it is said: "A conditional or contingent will is one to become effective upon the happening of a specified condition or contingency. When a will is limited in its operation by conditions that defeat it before the death of the testator it is void unless republished by the testator. Once defeated by its own limited conditions, its mere possession and preservation by the testator until his death does not amount to a republication."

There are many cases similar to *Walker* v. *Hibbard,* 185 Ky. 795, 215 S. W. 800, 11 A. L. R. 832, which holds, to quote headnote 3, that: "An instrument executed by a woman before going to the hospital, directing an aunt to see that in case anything happened 'that everything I have in the world goes to G.,' and 'if there is anything around the house you want of course it is yours' was a contingent will, and never became effective, where the testatrix completely recovered from the operation to which she was about to submit." For a list of cases in which particular language used in a will was held to make the will contingent or conditional see note 70 (b), 68 C. J., p. 631, and for language held not to make will contingent, see note 70 (c) same page.

The will here involved, assuming it to be a will, was dated March 10, 1929, and the decedent did not die until September 8, 1941, nearly twelve and one-half years later. During several of the last years of his life he lived with appellee, Miss Higgason. It will be noticed that in said instrument, he tells Miss Higgason, "I want you, in event that I should die anytime soon, to collect all my insurance" and other money, get it all together and divide it as directed. Again, in that same paragraph, he said: "Now in case of my death anytime soon, I would want," etc. In the next paragraph he again said: ". . . and I'm just doing this so in case I should die any time soon you would know," etc. Thus it appears

that three times he impresses upon his niece, to whom said letter was addressed, that his property was to be divided or distributed, as therein directed, only in case of his death "anytime soon." The effectiveness of the whole will and of all its precatory requests was dependent upon the contingency or condition of his death "anytime soon." Having thereafter lived twelve and one-half years, many of the last of which were with appellee, Miss Higgason, can it be said that he died "anytime soon," after March 10, 1929? Webster defines "soon" as: "2. With reference to an implied time or the present; shortly after; before long; with reference to a given time, shortly; in a short time; as, the odor *soon* disappears; results will *soon* be evident; *soon* after sunrise; it took place *soon* afterwards." Other definitions are given, but this one seems appropriate. The word "soon" as used in a contract to convey land by quitclaim deed, to be performed soon, was held to mean within a reasonable time. *Sanford* v. *Shephard,* 14 Kan. 228. See Words and Phrases, Per. Ed., p. 488. The phrase "at anytime" has frequently been held to mean within a reasonable time. See Words and Phrases. It seems to us necessarily to follow that the phrase or words "anytime soon" means within a short time, and that the decedent must have intended the writing here to become effective as a will only in the event of his death within a short or reasonable time after March 10, 1929, and not having died until September 8, 1941, the writing was ineffectual as a will.

Affirmed.

McFADDIN, J., disqualified and not participating.