16225

CAPPS *ET AL.* v. RICHARDSON *ET AL.*

(53 S. E. (2d) 876)

*Mr. C. W. Derrick,* of Marion, *for Appellants,*

*Mr. J. Malcolm McLendon,* of Marion, *for Respondents,*

June 1, 1949.

OXNER, Justice.

The primary question on this appeal relates to the construction of a will executed by L. L. Altman on February 22, 1941, which, omitting formal parts, is as follows:

"Item 1: Whereas, I am indebted to Draytford Richardson, as is evidenced by a mortgage bearing equal date with these presents, and whereas on account of the amount now due and in order to save any foreclosure proceeding of the said mortgage in the case of my death. I hereby will, devise and bequeath unto the said Draytford Richardson all of the property, real or personal, of which I may die seized.

"Item 2: I hereby nominate, constitute and appoint my sister, Mrs. Willie Richardson, as Executrix of this Will, she to serve as such without Bond."

On the same day the will was executed, L. L. Altman borrowed from his nephew, Draytford Richardson, the beneficiary named in the will, the sum of $214.29 and gave him a promissory note for this amount, secured by a mortgage on approximately three acres of land in Marion County which was duly recorded on February 24, 1941. The proceeds of this loan were used to pay an existing mortgage on said premises. On July 5, 1943, L. L. Altman paid to Draytford Richardson the full amount due on this mortgage which was then satisfied, and the satisfaction entered of record on July 6, 1943.

L. L. Altman died on April 16, 1946, seized and possessed of the three acre tract of land above mentioned and a small amount of personal property. He left no wife or children. His heirs at law consisted of five brothers and sisters and five nieces and nephews, children of a deceased sister. The executrix named in the will is the mother of Draytford Richardson, the beneficiary.

After the will was executed, it was left in the possession of the attorney who prepared it and kept in his safe until Altman died.

The question to be determined is: Does the provision contained in Item 1 constitute an absolute gift, or is the bequest and devise to Draytford Richardson contingent upon the subsistence of the mortgage indebtedness therein mentioned at the time of the death of L. L. Altman? The Court below took the latter view and held that since the mortgage had been satisfied prior to Altman's death, this provision ceased to be effective. Accordingly, the Court concluded that the will was effective only to the extent of the appointment of an executrix and directed that the estate be distributed, after the payment of debts and costs and expenses of administration, among the heirs at law under the terms of the Statute of Distributions.

Although there are numerous decisions in other jurisdictions involving the question of contingeent wills, many of them being reviewed in the excellent briefs filed by counsel, only a few cases have arisen in this State. Except for the general principles stated therein, we have found none of these authorities very helpful because the wills under consideration were made almost invariably in view of an impending journey or of a possible impending calamity. Even when executed under these circumstances, the courts have encountered considerable difficulty in determining whether the maker intended an absolute or a contingent disposition of his property. It appears from these decisions that whether a particular will is conditional or unconditional is largely dependent upon the factual situation presented.

"A conditional or contingent will is one which is dependent for its operation upon the happening of a specified condition or contingency. If the condition fails, the will is inoperative and void thereafter, unless it is republished." 57 Am. Jur., Wills, Section 671. "If the contingency is referred to in the will as a reason for making the

particular disposition of the property which is provided for, and the disposition and the contingency are so related to each other that the one is dependent on the other, the will is contingent. A will is not conditional, however, if the contingency expressed in the instrument is referred to merely as the inducement, by way of narrative, for making the will at the time it is made." *Barber v. Barber,* 368 Ill. 215, 13 N. E. (2d) 257, 261. The same general principle is stated in 68 C. J., Wills, Section 256, page 631, as follows: "Whether a will is to be regarded as contingent turns upon the point whether the contingency is referred to merely as the occasion of or reason for making the will at the time it is made, or is referred to as the reason for making the particular disposition of property which is provided for, and is intended to specify the condition upon which the will is to become operative, it being only in the latter case that the will is contingent." It is equally well settled that the "courts will not regard a will as conditional or contingent unless the intention of the testator to make it so clearly appears, either expressly or by necessary implication, from the language of the will as a whole." 57 Am. Jur., Wills, Section 672. "The cardinal rule of construction is to ascertain and effectuate the intention of the testator unless same contravenes some well-settled rule of law or public policy." *Peoples National Bank of Greenville v. Harrison et al.,* 198 S. C. 457, 18 S. E. (2d) 1, 3.

We shall now endeavor to construe the will involved in this controversy in the light of the foregoing principles. Draytford Richardson was not the sole natural object of the testator's bounty. He had other nieces and nephews and also brothers and sisters. Altman desired to refinance the mortgage indebtedness on his small tract of land and enlisted the aid of his nephew. The mortgage was executed contemporaneously with the will and each was a part of the same transaction. The amount of the loan was small. If foreclosure of the mortgage became necessary, the costs would have been rather large compared to the amount

involved. The testator evidently desired to do everything possible to protect his nephew against loss on this loan. The execution of this mortgage would not have ordinarily furnished an occasion for making a will nor constituted a suggestion or reminder of the uncertainty of life. Obviously, the intent was to avoid the trouble and the costs and expenses of foreclosure in the event the loan remained unpaid at the time of Altman's death. The devise and bequest to the nephew and the existence of the mortgage indebtedness are so related as to be interdependent. We are in full accord with the following views expressed by the learned Judge below: "The will was drawn by a very competent attorney and its language is free from any ambiguity. Hence upon due consideration thereof, I am of opinion that the words * * * 'and in order to save any foreclosure proceeding of the said mortgage in case of my death', do not indicate the motive or incentive for the gift, but that on the contrary they state its purpose or function, to wit, to save any foreclosure proceeding at the testator's death; the intent and meaning being that if the mortgage debt were not paid prior to the testator's decease, Draytford Richardson, the mortgagee, would not be required to go to the trouble, delay and expense of a foreclosure proceeding. But since at the time of Mr. Altman's death there was no subsisting mortgage or indebtedness to Draytford Richardson, the contingency or condition referred to in the will not having occurred, this item *ipso facto* never became effective."

The remaining question raised on this appeal involves the admissibility of certain testimony relating to alleged declarations by the testator, made both before and after the mortgage was paid and satisfied, to the effect that he had willed his property to Draytford Richardson and intended for him to have it when he died. Many of these alleged statements were of a vague, uncertain and contradictory nature, although a few were of the purport stated. This testimony was excluded upon the ground that it "tends directly to alter, vary and contradict the language of the will."

We agree with this view of the trial Judge. His conclusion is fully supported by the authorities cited and reviewed in *Walker v. Hibbard,* 185 Ky. 795, 215 S. W. 800, 11 A. L. R. 832.

If, as we have held, Item 1 was contingent and became inoperative upon the payment of the mortgage indebtedness, to allow declarations thereafter made by Altman to the effect that he intended that the property should go to his nephew would be the equivalent of permitting parol testamentary disposition of property in disregard of statutory requirements. The effect of this testimony would be to revive Item 1 which had ceased to be of any effect. Its admission would establish a precedent attended with much danger.

Judgment affirmed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.