Marie VAUGHT *v.* Wallace VAUGHT et al

5-4833                                    444 S. W. 2d 104

Opinion delivered September 2, 1969

*Shaw & Shaw*, for appellant.

*Joe H. Hardegree*, for appellees.

JOHN A. FOGLEMAN, Justice. The sole question to be determined is whether an instrument executed by

Otey R. Vaught on January 11, 1951, in his own handwriting is entitled to probate as his holographic will. Appellant contends that the trial court erred in denying probate of the instrument as being based on a contingency which did not occur. We find that the instrument was not contingent or conditional and that it should be admitted to probate.

Otey R. Vaught died June 5, 1966. He left only colla⁺eral heirs at law surviving him. Appellant Marie Vaught, a sister-in-law in whose home the decedent had lived on various occasions for many years and who had cared for him during various illnesses was the proponent of the will. Probate was opposed by the collateral heirs. The will bears the date of execution and signature of the testator. Its text is reflected in the record as follows:

> This is my will if I should die at once. I want Marie Vaught, to have my land and personal property. Sign by. /s/ Otey R. Vaught

This purported will was never revoked by the decedent. The denial of probate would result in intestacy and the descent and distribution of his property to numerous collateral heirs.

The rules governing determinations of this sort are easier to state than to apply. The particular question depends upon whether the contingency is referred to as the occasion of, or reason for, making the will at the time of execution, or is referred to as the reason for making the particular disposition of property which would be disposed of thereby and is intended to specify the condition upon which the will is to become operative. In the latter case, the will is contingent or conditional. In the former it is not. 1 Page on Wills (New Rev. Treatise), 418, 423, §§ 9.1, 9.5; Annot. 1 A. L. R. 3d 1048, 1050; 57 Am. Jur. 453, 456, §§ 671, 674; 94 C. J. S. 939, Wills § 152; *In re Taylor's Estate,* 119 Cal. App. 2d 574, 259 P. 2d 1014 (1953).

It is when the contingency and the disposition of the property are so related to each other that the one is dependent on the other that the will is contingent. *Barber* v. *Barber,* 368 Ill. 215, 13 N. E. 2d 257 (1938); *Capps* v. *Richardson,* 215 S. C. 34, 53 S. E. 2d 876 (1949).

Unless the terms of the will clearly show that it was intended to be contingent it will be regarded as absolute and unconditional. 1 Page on Wills (New Rev. Treatise), 423, § 9.5; 94 C. J. S. 940, Wills § 152; 57 Am. Jur. 454, Wills § 672; *In re Desmond's Estate,* 223 Cal. App. 2d 211, 35 Cal. Reptr. 737, 1 A. L. R. 3d 1043 (1963); *Walker* v. *Hibbard,* 185 Ky. 795, 215 S. W. 800, 11 A. L. R. 832 (1919); *Skipwith* v. *Cabell,* 19 Gratt. 758 (Va. 1870); *In re Moore's Estate,* 332 Pa. 257, 2 A. 2d 761 (1938). If the language used can reasonably be construed to refer to a possible danger or threatened calamity only as a reason for making a will at the time, rather than as a condition precedent to the will becoming operative, it will not be construed to render the will conditional. Annot. 40 A. L. R. 2d 698, 731 et seq.; 57 Am. Jur. 454, Wills § 672; 94 C. J. S. 940, Wills § 152; *Walker* v. *Hibbard,* supra; *In re Taylor's Estate,* supra; *Skipwith* v. *Cabell,* supra. See also 1 Page on Wills (New Rev. Treatise) 424, § 9.5; *Eaton* v. *Brown,* 193 U. S. 411, 24 S. Ct. 487, 48 L. Ed. 730 (1904).

As a corollary of the rule requiring that a will be given an interpretation which avoids intestacy, long recognized in Arkansas,[1] a will must be construed as unconditional in case of doubt. 57 Am. Jur. 454, Wills § 672; *Walker* v. *Hibbard,* supra; *Watkins* v. *Watkins,* 269 Ky. 246, 106 S. W. 2d 975 (1937); *In re Trager's Estate,* 413 Ill. 364, 108 N. E. 2d 908 (1952); *Succession of Gurganus,* 206 La. 1012, 20 So. 2d 296 (1944).

Appellees rely upon *Wilson* v. *Higgason,* 207 Ark.

[1]See *Galloway* v. *Darby,* 105 Ark. 558, 151 S.W. 1014; *Bradshaw* v. *Pennington,* 225 Ark. 410, 283 S.W. 2d 351.

32, 178 S. W. 2d 855, to sustain the judgment of the trial court. The language contained in the instrument in that case was very different from that involved here. In one sentence the testator there stated, "Now Lillie since I have made you my beneficiary in all my insurance, I want you, in the event I should die anytime soon, to collect all my insurance and if I have any money left anywhere I would want you to get it all together and divide it equally among your mother, Eddie, Mattie, Myrtise's heirs, Bill, Lauree and yourself." In another sentence, he said, "Now in case of my death anytime soon, I would want Myrtise's part or part of it anyway to go towards paying some of the expenses of her sickness and death, but should these bills be already paid I would want it to go to Ned and Olive ..." The writer of that letter certainly did not desire that the addressee collect his insurance and money and make the division directed unless he died "anytime soon." Nor did he intend for his other desires to be carried into effect except in case of his death soon. In other words, the conditions there stated could have *only* been construed as stating the conditions under which the testamentary document became operative and not as the reason for making a will. On the other hand, the language "This is my will if I die at once" *can* be construed as stating the reason for the making of the will, *i. e.,* that possibility of impending death which provokes much testamentary action. Since it can be so construed, it should be.

The decision in the *Wilson* case is not contrary to the rules for determining whether a will is contingent or absolute. Most of these rules are specifically stated or recognized in *Walker* v. *Hibbard*, 185 Ky. 795, 215 S. W. 800, 11 A. L. R. 832 (1919), cited as authority in the *Wilson* opinion, as will appear from citations above. *Walker* v. *Hibbard* is also cited in Kentucky as authority for most of these rules. See, *e. g., Watkins* v. *Watkins*, 269 Ky. 246, 106 S. W. 2d 975 (1937).

In resolving doubtful cases, parol evidence of ex-

trinsic circumstances is admissible to show that the testator's intention was to make an absolute, rather than a contingent will. *In re Desmond's Estate,* 223 Cal. App. 2d 211, 35 Cal. Rptr. 737, 1 A. L. R. 3d 1043 (1963); *In re Moore's Estate,* supra; *In re Trager's Estate,* supra; *Barber v. Barber,* 368 Ill. 215, 13 N.E. 2d 257 (1938); 57 Am. Jur. 457, Wills § 677; 94 C. J. S. 940, Wills § 152; Annot., 1 A. L. R. 3d 1048, 1051. Such evidence may be considered in interpretation of wills, not to show what the testator meant as distinguished from what his words express, but for the purpose of showing the meaning of the words used. *Eagle* v *Oldham,* 116 Ark. 565, 174 S. W. 1176. Extrinsic circumstances which may be considered include: (a) those surrounding execution and delivery of the document *In re Del Val's Estate,* 159 Cal. App. 2d 600, 323 P. 2d 1011 (1958)] (b) instructions upon delivery of the instrument [*In re Del Val's Estate,* supra; *In re Taylor's Estate,* 119 Cal. App. 2d 574, 259 P. 2d 1014 (1953)] (c) subsequent declarations of the testator (*In re Del Val's Estate,* supra; *In re Taylor's Estate,* supra) (d) lack of a subsequent will or revocation [*In re Del Val's Estate,* supra; *Succession of Gurganus,* 206 La. 1012, 20 So. 2d 296 (1944); *In re Taylor's Estate,* supra] (e) lack of any alternative disposition of his property (*In re Del Val's Estate,* supra) (f) whether disposition is of entire estate or part thereof (*In re Del Val's Estate,* supra).

Delivery of a will to someone for preservation is evidence a testator intended it to be unconditional. *In re Taylor's Estate,* supra. The fact that a long term of years passed between the writing and the testator's death without revocation is significant. *Succession of Gurganus,* supra.

It is not inappropriate that we also take into consideration the fact that appellant was a natural and proper object of the decedent's bounty. *Eaton v. Brown,* 193 U. S. 411, 24 S. Ct. 487, 48 L. Ed. 730 (1904); *Skip-*

*with* v. *Cabell,* 19 Gratt. 758 (Va. 1870). Previous association of the testator and the beneficiary of the will indicating that the former desired the latter to be the recipient of his property whenever death occurred tends to show that testator's statements concerned the reason for making a will. *Wood* v. *Greimann,* 165 F. 2d 637 (1948).

If resort is had to the extrinsic evidence offered, there is ample support for a finding that it was absolute, in spite of the fact that Fannie Vaught, one of appellees, testified that Otey told her in 1960 that he had never made a will. Bob Vaught, son of appellant, testified that he took Otey Vaught to a hospital on two different occasions, the first time for surgery and the second because of a stroke. Bob said that on the first occasion his uncle told him to get the instrument in question and a certain deed from a trunk and to take them to appellant. On the second occasion (apparently in 1959), according to this witness, he asked Otey Vaught if this instrument should not be "notarized," but the latter said that it was all right and to tell appellant to just keep it. Appellant testified that her son brought the paper to her after Otey's first hospitalization and told her to keep it and not let anyone have it. Willard R. Bowling testified that when he attempted to purchase a 40-acre tract of land from Otey Vaught, Mr. Vaught stated that he had "willed" the property to appellant and wanted her to have it when he died. When this testimony is considered along with evidence showing that appellant, her deceased husband and their two sons, cared for and provided a home for the decedent on various occasions, the length of time intervening between the writing of the will and Otey's death without revocation or attempt to recover the instrument, and the fact that the will disposed of all his property, the conclusion that the will is absolute rather than contingent is amply supported.

We reverse, with directions to admit the paper writ-

ing to probate as the last will and testament of Otey R. Vaught.

GEORGE ROSE SMITH, BROWN and BYRD, JJ., dissent.

LYLE BROWN, Justice, dissenting. The chancellor had a right to conclude from the evidence that Otey R. Vaught executed the will at a time when he was preparing to enter Veterans Hospital in Little Rock for an operation. Bob Vaught, son of the appellant, Marie Vaught, testified to this effect:

Q. Will you tell the court how you came into possession of this piece of paper that's been offered as a will of Otey Vaught?

A. Well, I took him to the VA Hospital and he made this out the night before or sometime—shortly before that, and when I got ready to come home to leave him over there to the VA Hospital he told me about where it was at—the deeds and everything—he told me to get them and give them to my mother, and when I got back from over there I got them and gave them to her.

Q. After that time did Otey get well and leave the VA Hospital?

A. Well, he never did get well, but he come home for—I don't remember just how long it was. He had a stroke and he was an invalid for around eight years. He was took to my aunt and uncle's home at Crystal Hill, and then he was later placed in the Rosa's Nursing Home and that was where he was at when he got real bad sick. He died at the Polk County Memorial Hospital.

The appellant corroborated her son. Referring to

the time when the will came to her hands from her son, she testified:

> A. Well, I don't know whether I could tell you exactly what year that was, but it was when he had his first operation. When he was going to Little Rock to have his first operation. I couldn't say what year it was to save my neck.

Concededly there is some evidence to the contrary, but I am convinced the record preponderantly shows that the testator was in ill health and facing an operation at the time he wrote these words: "This is my will if I should die at once." To my thinking the statement is susceptible of but one meaning. As here used and according to all the reliable dictionaries, the word "if" has a most simple meaning: "in case that," "granting or supposing that," "on condition that." The same authorities tell us that "if" implies a condition on which something depends and the typical synonym is "provided." It was aptly stated in the will case of *Robnett v. Ashlock*, 49 Mo. 171 (1872): "'If' may be a small word, but all know its meaning, and instead of a more formal phrase it is used in common language to express condition or limitation . . ."

For the reasons recited I am convinced that there is a clear showing of a contingent will. Certainly the finding of the chancellor is not against the preponderance of the evidence.

GEORGE ROSE SMITH and BYRD, JJ., join in this dissent.