HEIRS OF OLIVER W. MILLS v. CHARLES WILLIAM WYLIE ET AL

5-5548                                    466 S. W. 2d 937

Opinion delivered May 17, 1971

David J. Potter, for appellants.

Graves & Graves, for appellees.

CARLETON HARRIS, Chief Justice. There is an old adage "Hard cases make bad law". The circumstances of this case are such that the old adage can be understood for actually our holding in this case may not be in accord with the actual intention of the testator—existing in his mind—but certainly it is in accord with long established law that the court's finding shall be based on the intention of the testator—*as expressed by the language of the will.* Appellants are the heirs of Oliver W. Mills, consisting of six persons, but actually it appears that there are approximately ninety-three persons eligible to share in the estate of Oliver W. Mills provided appellants prevail. Mills died testate, a resident of Hempstead County on the 5th day of November, 1969. His wife had predeceased him, and the two had no children. Charles William Wylie, a nephew of decedent's wife, was named executor of the will, and it was admitted to probate. Subsequently, Wylie, also the main beneficiary, petitioned the court for a construction of the will and determination of heirship; the petition was granted, and a hearing was held by the court which included the testimony of Wylie and two persons on his behalf, and the testimony of four respondents. At the conclusion of the hearing and after submission of briefs, the court filed its opinion construing the will in favor of Mr. Wylie and Hattie Tyree, a sister of Mrs. Mills, and sister-in-law of the deceased, who was also a beneficiary. From the order so entered, appellants have brought this appeal. For reversal, four points are asserted, but all relate to the fact that the judge permitted the taking of extrinsic evidence for the purpose of determining whether there was an ambiguity, when appellants say there was no ambiguity.

The will,[1] executed by Mills on August 10, 1966,

---

[1] The will was prepared by Nellie Jean Webb, who was also one of the witnesses, a former legal secretary for a Hope legal firm. Following her employment by that firm, she had been employed at Red River Vocational School, but was not working at all at the time of the trial. Mrs. Webb copied the language in paragraph three, pertinent to this appeal, from a will which had been executed some years earlier, though changes were made in the beneficiaries, and the portions which were devised and bequeathed. Mrs. Webb stated that she typed it as a favor to friends and that Mrs. Mills gave her $5.00 for doing so.

after providing for the payment of debts, reads as follows:

"2. I give, devise and bequeath all my property of every kind, whether real, personal or mixed, to my beloved wife, Mary B. Mills. In the event Mary B. Mills survives me, and remarries, then I direct that my estate be divided between Mary B. Mills and Charles William Wylie, share and share alike.

3. Should Mary B. Mills and I meet death in a common disaster, then I direct that my estate go to the following:

The Snell Cemetery at Emmett $250.00;
Rose Hill Cemetery at Hope $250.00;
First Methodist Church at Hope $500.00; and
Emmett Methodist Church at Emmett $250.00.
Hattie Tyree .............................................. one fourth (in the event Hattie Tyree predeceases me then I direct that the part that she would have received go back to my estate)
Charles William Wylie ................... the remainder of my estate

5.[2] In the event Charles William Wylie dies without issue, I direct that my entire estate go to my sister-in-law, Hattie Tyree.

6. If Hattie Tyree should survive me, and wants to live in one of our homes I direct that all furnishings be left in said home for her to use, and also a car, for her use during her lifetime.

7. I hereby nominate, constitute and appoint Charles William Wylie as executor of my estate under this my Last Will and Testament and, if it is possible for him to serve in this capacity, I desire that he do so without bond. In the event Charles William Wylie is unable to serve as executor of my estate for any rea-

---

[2]There was no item four, Mrs. Webb stating that she simply made a mistake in numbering.

son, I desire that the Court appoint some-one to serve, but that it not be either one of my brothers-in-law."

The instrument was then signed by Mills and witnessed by two persons, but there is no dispute but that Mills did execute the will, and that he was fully competent to do so, and acted without undue influence.

In his brief, counsel for appellant suggests that we first read the will without reading the testimony, and thus determine if there is any ambiguity in the written instrument. He was confident that we would find none— and his confidence was justified—for no ambiguity is discovered. It, of course, is apparent to any attorney who has read thus far that the language at issue, and which determines the outcome of this litigation, is found in item three as follows: "*Should* Mary B. Mills and I meet death in a common disaster, *then* I direct that my estate go to the following: [Emphasis supplied]"

Appellant's contention is very simple, *viz,* the disposition in items three and five is made subject to the contingency that Mills and his wife should be killed in a common disaster.

It very clearly appears from the language in the instrument that Mills had two thoughts in mind in making this will, first, he declared what would happen if his wife survived him, and secondly he provided what would happen if he and his wife were killed in a common disaster. In the first instance, the language provides that testator's wife is to receive all of his property, but that in the event she remarries, then one-half of his estate is devised and bequeathed to Wylie. This item never became effective because Mrs. Mills predeceased her husband. Likewise, item three never became effective because the testator and Mrs. Mills did not die in a common disaster. Item five can mean nothing, for Wylie was only to receive his interest in the estate under either item two or item three; otherwise, he received nothing. Since neither of the contingencies mentioned in those two items occurred, both provisions are completely ineffective.

Items six and seven are not under attack by appellants, and are thus not involved in this appeal.

It has often been loosely said that in construing a will, a court endeavors to determine the intention of the testator—but this statement is not quite true. As stated in *Park* v. *Holloman,* 210 Ark. 288, 195 S. W. 2d 546:

"The appellants are correct in the statement that the purpose of construction is to arrive at the intention of the testator; *but that intention is not that which existed in the mind of the testator, but that which is expressed in the language of the will.* [Emphasis supplied]"

In *Smith* v. *Smith,* 229 Ark. 579, 317 S. W. 2d 275, this court stated:

"It is well settled law in this state, so well settled as to require no citation of authority, that where there is no ambiguity, or no conflict or repugnance between the provisions of the will, judicial interpretation or construction is not required."

In *Quattlebaum* v. *Simmons National Bank of Pine Bluff,* 208 Ark. 66, 184 S. W. 2d 911, we held that where the meaning of the language in a will is unambiguous, testimony as to the testator's intention is inadmissible. In *Wilson* v. *Storthz,* 117 Ark. 418, 175 S. W. 45, we said:

"The testator's intention must be gathered from the will, and, while evidence may be received to explain any ambiguity in the designation of a beneficiary, yet neither the scrivener, nor anyone else, can be permitted to testify that the testator meant or intended any disposition of his property not expressed in the will."

In *Rufty* v. *Brantly,* 204 Ark. 32, 161 S. W. 2d 11, it was said:

"The rule is, however, inflexible that surrounding circumstances cannot be resorted to for the purpose of

importing into the will any intention which is not there expressed, and when a will is not ambiguous in terms it is unnecessary to resort to testimony as to the surrounding circumstances in order to ascertain its meaning."

Almost an inestimable number of cases could be cited to the same effect. We have thus said that where the meaning of the language is not ambiguous, testimony as to the testator's intention is "inadmissible", "unnecessary", "construction is not required", and no one "can be permitted to testify that the testator meant or intended any disposition of his property not expressed in his will". Perhaps these holdings can be summed up by a holding of this court in *Lavenue* v. *Lewis,* 185 Ark. 159, 46 S. W. 2d 649, wherein we quoted from one of the great United States Supreme Court Justices as follows:

"The first great rule in exposition of wills (to which all other rules must bend) said Chief Justice Marshall, in *Smith* v. *Bell,* (6 Pet.) 31 US 68, 8 L. Ed. 322, is that *the intention of the testator expressed in his will* [emphasis supplied] shall prevail, provided it be consistent with the rules of law."

Since we find that there was no ambiguity, there is no necessity to discuss the testimony. Under our decision in *Vaught* v. *Vaught,* 247 Ark. 51, 444 S. W. 2d 104, a case referred to by the chancellor, testimony on the question of why Mills placed the common disaster clause in the instrument, might have been pertinent as showing whether the contingency was the reason for making the will at the time of execution, or whether it was intended to specify the condition upon which the will was to become operative. For instance, testimony that Mills and his wife were getting ready to make a long trip within a few days by automobile or airplane might well have been pertinent to the question of whether the will was conditional. There was, of course, no such evidence. In *Vaught* v. *Vaught supra,* we were called upon to determine whether the court should have admitted a holographic will to probate. The opening

sentence of the will read, "This is my will if I should die at once". The testator then set out, "I want Marie Vaught, to have my land and personal property". The instrument was dated January 11, 1951, and Vaught died on June 5, 1966. This court stated:

"The particular question depends upon whether the contingency is referred to as the occasion of, or reason for, making the will at the time of execution, or is referred to as the reason for making the particular disposition of property which would be disposed of thereby and is intended to specify the condition upon which the will is to become operative. In the latter case, the will is contingent or conditional. In the former it is not. 1 Page on Wills (New Rev. Treatise), 418, 423, §§ 9.1, 9.5; Annot. 1 A. L. R. 3d 1048, 1050; 57 Am. Jur. 453, 456, §§ 671, 674; 94 C. J. S. 939, Wills § 152; *In re Taylor's Estate,* 119 Cal. App. 2d 574, 259 P. 2d 1014 (1953)."

The words "if I should die at once" state a contingency, and oral evidence was admissible to shed light on the reason for the use of this language. The proof reflected that the will was apparently made in contemplation of hospitalization and surgery. Accordingly, in effect, we held that the impending surgery was the occasion or reason[3] for the testator making the will at the time of execution and the will was thus not a contingent or conditional will, reversing the trial court in a four to three decision. But that situation is not present in the instant case.

---

[3]In *Vaught* v. *Vaught supra,* referring to *Wilson* v. *Higgason,* 207 Ark. 32, 178 S. W. 2d 855, we said: "The writer of that letter [testator] certainly did not desire that the addressee collect his insurance and money and make the division directed unless he died 'anytime soon.' Nor did he intend for his other desires to be carried into effect except in case of his death soon. In other words, the conditions there stated could have *only* been construed as stating the conditions under which the testamentary document became operative and not as the reason for making a will. On the other hand, the language "This is my will if I die at once" *can* be construed as stating the reason for the making of the will, *i. e.,* that possibility of impending death which provokes much testamentary action. Since it can be so construed, it should be."

The chancellor, in his opinion, referred to our holding in *Vaught* v. *Vaught supra,* stating:

"If this test applies in determining if a will is unconditional it should apply in determining if it is ambiguous, more especially when as here the extrinsic evidence in the record clearly establishes what the deceased intended."

It is apparent from what we have said about the holding in *Vaught,* that we cannot agree with this statement of the chancellor, and actually if there is any ambiguity in this case, it was created by the testimony —*not* by the language.

Were we to affirm this case, no will would be immune from a possible successful attack, for while the testator might plainly state the disposition desired, there could well be numerous heirs who would go into court to prove by oral evidence that "Grandpa", or "Uncle Jim", or whoever the testator might be, really meant something else, and had numerous times, over the years, stated contrary intentions to those expressed in the will.

As we construe the English Language, the words used in the will of Oliver W. Mills are plain and clear, and entirely free from ambiguity, and it follows that all oral evidence was inadmissible.

Without any intention of being critical of the scrivener of this will, we have another clear example of a person who is untrained in the law, and totally unfamiliar with rules of construction, preparing a legal instrument. Many wills, and many deeds, have passed, and conveyed, property in a manner inconsistent with the desire that the testator, or grantor, might have had in mind, because the instrument was not prepared by one familiar with the legal effect of words used.

The order of the Hempstead County Probate Court is reversed and the cause remanded to that court for the entry of a decree consistent with this opinion.

BROWN, J., not participating.